Harold E. MONROE, Appellant,

v.

**UNITED STATES, Appellee.**

No. 12451.

District of Columbia Court of Appeals.

Argued April 4, 1978.

Decided July 18, 1978.

---

Gwendolyn Jo M. Carlberg, Washington, D.C., appointed by this court, for appellant.

Thomas G. Corcoran, Jr., Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, Michael W. Farrell, and Paul N. Murphy, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and YEAGLEY and MACK, Associate Judges.

NEWMAN, Chief Judge:

Appellant was convicted after a jury trial of kidnapping while armed, armed robbery, and two counts each of carrying a pistol without a license and unauthorized use of a vehicle. On appeal he alleges the abridgment of his Sixth Amendment right to counsel by the trial court's summary denial of his pretrial motion to change counsel, and its concomitant failure to inquire into his claim of ineffective assistance of counsel before ruling on the motion. In Section I, we set forth the relevant evidence and trial proceedings. We determine the proper standard by which pretrial claims of ineffective assistance of counsel should be measured in Section II. We discuss in Section III the proper scope of inquiry the trial court must conduct when confronted with a pretrial claim of ineffective assistance. Section IV contains reasons for our disposition adverse to appellant of this appeal. We affirm.

I

At approximately 12:00 a. m. on Friday, November 11, 1976, Moses Jahnrett drove to a Texaco gasoline station at the intersection of Good Hope Road and Thirteenth Street, Southeast to purchase a soda from the station's vending machine. After making the purchase, he returned to his auto; as he opened his car door to get back in, someone struck him, placed a gun to his head, told

him "it was a stick-up," and pushed him into the car. A man later identified as appellant sat behind the driver's wheel, and a woman, later identified as his codefendant, Doretha Alston, got in on the passenger side. At appellant's direction, Alston searched Jahnrett's pockets, and took 23 cents and his watch.

Appellant then drove Jahnrett's car to Cooper's Bar on Good Hope Road. Alston went inside and soon returned with a second man, who seated himself in front beside Jahnrett. Appellant and Alston, who sat in the backseat behind appellant, repeatedly struck Jahnrett with the gun and demanded more money. Jahnrett replied that he had no more money. Appellant then drove around in the Southeast district and eventually stopped the car behind an apartment building near Route 95. There appellant resumed his beating of Jahnrett with the gun, pulled him out of the car, and continued to beat him. After stripping Jahnrett, who had fallen to the ground, of his clothing and covering him with a plywood board, appellant and his companions then drove away in Jahnrett's car.[1]

Counsel was appointed for appellant on November 13, 1976, at presentment.[2] A preliminary hearing was held on November 18, 1976, and appellant was bound over for the grand jury. Subsequent to his indictment by the grand jury, appellant was arraigned on February 2, 1977, and a status hearing, which was attended by both appellant and his appointed counsel, was held on February 22, 1977. On April 4, 1977, a jury was impaneled, but not sworn, and trial was continued until the next day. On the morning of April 5 appellant's oral motion for severance of his trial from that of his codefendant Alston was heard and denied. Counsel for appellant thereupon informed the court that his client wished to address the court. The following colloquy between the court and appellant then ensued:

THE COURT: Mr. Monroe wants to say that he is noy [sic] satisfied with his attorney now, and I think you ought to bring him to the bench. . . . he can stand up and make known anything he wants in that regard.

\*     \*     \*     \*     \*     \*

THE COURT: Mr. Monroe, I understand you wish to voice some dissatisfaction with your lawyer. You may make any statement you want to.

First, I will make it clear that this lawyer has been appointed for you by another Judge of the Superior Court, not this present-sitting Judge.

Now, is there anything you want to say about him?

DEFENDANT MONROE: Yes, sir.

THE COURT: Stand up and make your statement, sir.

DEFENDANT MONROE: Your Honor, I am not satisfied with my attorney in this case. I would like to say there is lack of communication. He hasn't investigated the case to the best of his ability.

THE COURT: All right. This case came on for hearing at 9:30 yesterday morning. And, as a matter of fact, it was discussed between the Government attorney and the two defense lawyers last week, with the Court.

Last week the defense attorneys, including yourself, had some matters to study out and to talk with their clients. You were brought up from the jail yesterday, and your attorney reported to me, in the course of the morning, that he had to talk some more with you. There was a conference between the Assistant U.S. Attorney, . . , and the two defense lawyers in my chambers before the trial started.

The purpose of the conference was to get this Court to not start promptly yesterday, but to give the lawyers a chance to talk

---

1. Upon recovery of his vehicle subsequent to the incident, Jahnrett discovered that a digital watch and several personal documents (*e. g.,* his automobile registration) had been taken from his glove compartment, in addition to a tire which had been removed from his trunk.

2. Different counsel represents appellant on this appeal.

with the defendants, and we didn't start until after 2:00 o'clock yesterday in this case. I guess it was probably after 3:30, which meant in some respects this Court lost the best part of a day waiting for lawyers to confer with their clients. I know at least that your lawyer have [sic] had that much communication with the defendants.

I have no evidence, from what you have said or anything that has been presented to me, one, that [your attorney] is not a competent attorney. In fact, the evidence is to the contrary, because this Court has seen him perform in his professional capacity in a number of cases for a number of years. And secondly, there is no evidence of inadequate preparation on his part, and the conclusion that the Court reaches is that there is no basis for this Court to conclude that [he] will not give you adequate representation in the course of this trial. If such occurs, then that will be another matter.

So I would presume your request is for continuance to get other counsel.

DEFENDANT MONROE: Yes.

THE COURT: If that is a request, it is denied.

Have you hired a lawyer?

DEFENDANT MONROE: My mother is trying to hire one now.

THE COURT: Trying to hire won't help. He should be here now, and if so, and he is ready to go forward, then the Court would request—had he wanted it done that way, the Court would request [your appointed counsel] to sit with your other lawyer to be counsel to him and assist in any way he can. But since he is not present—

What is the name of the lawyer you hired?

DEFENDANT MONROE: Your Honor, I have no idea.

THE COURT: All right. We will proceed with the case. Thank you.

[DEFENSE COUNSEL]: Your Honor, for the purposes of the record I, yesterday, obtained beforehand the copy of the grand jury testimony, and also a copy of the state-

ment that was made by the codefendant, and I have given that to my client. He has read it.

Also, since this case was brought up one day before, that if there was [sic] any witnesses that the Court would have those witnesses here, issue a forthwith subpoena and bring them forth to the court.

THE COURT: I would. I had to do that in the last case that you had before this Judge.

[DEFENSE COUNSEL]: Yes, sir.

I have indicated to him that certainly this would . . . be a situation where if we had any witnesses they would be brought to court. If there is anything that he wanted in reference to this trial, legally, if I could do it for him, I would do it for him.

THE COURT: Well, [DEFENSE COUNSEL], this Court finds no fault, and makes no criticism toward your representation of this defendant.

Do you know of any witnesses? Have any been made known to you from the defendant or anyone else, who are not present?

[DEFENSE COUNSEL]: I know of no witnesses, Your Honor.

THE COURT: All right.

II

The guarantee that a defendant shall enjoy the right to the assistance of counsel has been recognized in federal courts and in the District of Columbia since the adoption of the Sixth Amendment. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). For nearly a half-century, this guarantee has constituted the desideratum of the entire American system of criminal justice. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Declaring the right to counsel to be "one of the safeguards . . . deemed necessary

to insure fundamental human rights of life and liberty," the Supreme Court in *Johnson v. Zerbst, supra,* stated:

> [The Sixth Amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly, and necessary to the lawyer—to the untrained layman—may appear intricate, complex, and mysterious. [*Id.*, 304 U.S. at 462–63, 58 S.Ct. at 1022.]

The Sixth Amendment guarantee of counsel has been further described as " 'so fundamental and essential to a fair trial, and so, to due process of law,' " *Gideon v. Wainwright, supra,* 372 U.S. at 340, 83 S.Ct. at 794 (citation omitted), as to be regarded as " 'implicit in the concept of ordered liberty.' " *Id.* at 342, 83 S.Ct. at 795 (citation omitted).

■■■ It is now axiomatic that no defendant in a federal or state criminal proceeding may be validly convicted and imprisoned unless he has been afforded the right to counsel in accordance with the commands of the Sixth and Fourteenth Amendments. *Powell v. Alabama, supra; Johnson v. Zerbst, supra; Gideon v. Wainwright, supra; Argersinger v. Hamlin, supra.* The fundamental right to counsel demands far "more than the mere presence of someone with a law degree." *State v. Renshaw,* 276 Md. 259, 347 A.2d 219, 226 (1975). It is the right to the *effective* assistance of counsel "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 771 & n. 14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

■■ Because the assistance of counsel is "requisite to the very existence of a fair trial," *Argersinger v. Hamlin, supra,* 407 U.S. at 31, 92 S.Ct. at 2009, the right to such assistance "invokes, of itself, the protection of a trial court." *Johnson v. Zerbst, supra,* 304 U.S. at 465, 58 S.Ct. at 1023. Thus, the trial court is charged in the first instance with the serious and weighty responsibility to ensure that the trial of an accused is conducted with solicitude for his essential right to have the assistance of counsel. *Glasser v. United States,* 315 U.S. 60, 71, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Beyond that, the trial court also has the duty to ensure that the assistance thereby rendered to an accused comports with at least the minimum level of competence consistent with our standards of the fair administration of justice. *See McMann v. Richardson, supra,* 397 U.S. at 771, 90 S.Ct. at 1449. "[I]f the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and . . . judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *Id.*

In this case we are confronted with the issue of the level of preparedness which counsel must demonstrate where a defendant asserts *pretrial* a claim of ineffective assistance of counsel.[3]

■■ Pretrial claims of ineffective assistance of counsel due to the defense attorney's lack of consultation with his client and lack of preparation raise serious issues; for communication, investigation, and preparation are among the essential prerequisites to the presentation of the type of "intelligent and knowledgeable" defense effort which conforms to professional stan-

---

**3.** Where the issue presented is a *post-trial* claim of ineffective assistance of counsel, the test we have adopted is that of *Angarano v. United States,* D.C.App., 312 A.2d 295 (1973), rehearing en banc denied, D.C.App., 329 A.2d 453 (1974) (whether counsel's performance can be considered so gross as to have resulted in blotting out a substantial defense). We note that the Supreme Court, by its denial of certiorari in several cases, has declined to consider the issue of what constitutes the proper standard by which post-trial ineffective assistance of counsel claims should be determined. *See Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977), *cert. denied,* 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978); *Rickenbacker v. Warden,* 550 F.2d 62 (2d Cir. 1976), *cert. denied,* 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977); Annot., 26 A.L.R. Fed. 218, 222–26 (1976).

dards of reasonably competent legal representation. *Caraway v. Beto,* 421 F.2d 636, 637–38 (5th Cir. 1970). In reference to the relationship which diligent pretrial preparation bears to effective representation at a criminal trial, the American Bar Association has stated:

> [I]t is axiomatic among trial lawyers and judges that cases are not won in the courtroom but by the long hours of laborious investigation and careful preparation and study of legal points which precede the trial. . . . The adversary process assumes that its proper functioning demands that both sides have prepared and organized their case in advance of trial. . . . Thus, investigation and preparation are the keys to effective representation in the broad sense in . . a trial. . . . Neglect of any of these steps may preclude the presentation of an effective defense. . . . It is impossible to overemphasize the importance of appropriate investigation to the effective and fair administration of criminal justice.
>
> *     *     *     *     *     *
>
> Failure to make adequate pretrial investigation and preparation may be grounds for finding ineffective assistance of counsel [at post-trial proceedings]. [ABA Standards Relating to the Defense Function § 4.1, Introductory Note at 224–25 & Commentary at 228 (citation omitted) (Approved Draft 1971).]

When a lawyer has failed to exercise due diligence in the defense of his client, he has violated his professional and ethical obligation to "act with competence and proper care in representing clients," ABA Code of Professional Responsibility, Ethical Consideration 6–1 (1971), and may be subjected to disciplinary sanctions therefor. ABA Code of Professional Responsibility, Disciplinary Rule 6–101(A) (1971).

Since client dissatisfaction with the quality of defense representation usually is first manifested after an adverse verdict has been rendered, claims of ineffective assistance of counsel have most often been asserted at the post-conviction stages of criminal proceedings and thus have generally been regarded primarily as a post-conviction problem. Bines, *Remedying Ineffective Representation in Criminal Cases: Departures from Habeas Corpus,* 59 Va.L.Rev. 927, 939 (1973) (hereinafter "Bines"). The most prevalent standard by which such post-trial claims have been reviewed is the "mockery-of-justice" standard. Strazzella, *Ineffective Assistance of Counsel Claims: New Uses, New Problems,* 19 Ariz.L.Rev. 443, 446–47 (1977) (hereinafter "Strazzella"). According to this standard of review, a judgment of conviction may not be reversed because of ineffective assistance of counsel unless counsel's advocacy may be characterized as so grossly deficient that the accused's trial thereby degenerated into a farce and mockery of justice. Bines, *supra* at 928. *See* Annot., 74 A.L.R.2d 1390 (1960). This standard originated from the courts' traditional focus on due process precepts rather than on right to counsel guarantees. Strazzella, *supra* at 448. Thus, this test has been held to mandate reversal only in those cases—few in number—in which the representation given to an accused was so inadequate as to have deprived him of his basic right to a fair trial. 74 A.L.R.2d at 1397–98. *See* Strazzella, *supra* at 448–49. The threshold level of advocacy necessary for affirmance under this standard (and other similarly limited standards of review, see, e. g., *Angarano v. United States,* D.C.App., 312 A.2d 295 (1973), *rehearing en banc denied,* D.C.App., 329 A.2d 453 (1974) (gross incompetence of counsel which has in effect blotted out the essence of a substantial defense), *relying on Bruce v. United States,* 126 U.S.App.D.C. 336, 379 F.2d 113 (1967)) requires the demonstration of only minimal competency by defense advocates. The stringency of the corresponding standard for reversal thereby set has served as a formidable barrier to success for defendants challenging their convictions on this ground by direct appeal or by collateral attack.

Historically several major policy considerations arising out of the post-conviction context in which this issue has emerged

have significantly influenced the adoption of such minimal standards of competency for defense attorneys. First, and most importantly in the view of its proponents, "[t]he mockery-of-justice standard . . . reflects the view that the policy of finality in criminal cases so outweighs the consequences of inferior defense work that only the most serious errors and omissions by counsel [are held to] deprive the defendant of a fair trial." Bines, *supra* at 929 (footnote omitted). According to this rationale, defendants all too frequently equate effective assistance of counsel with the procurement of a verdict of acquittal. Convicted defendants facing incarceration usually blame their attorneys for a perceived failure to gain an acquittal and assume that a better attorney could have "beaten the rap." Such defendants, the rationale goes, desirous of upsetting adverse verdicts, can be expected to make extravagant, even perjurious, claims of ineffective assistance of counsel because they have nothing to lose. *See Brubaker v. Dickson,* 310 F.2d 30, 39 (9th Cir. 1962); *Mitchell v. United States,* 104 U.S.App.D.C. 57, 62, 259 F.2d 787, 792, *cert. denied,* 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958); Note, *Effective Assistance of Counsel for the Indigent Defendant,* 78 Harv.L.Rev. 1434, 1448 (1965).

Reversal is the dominant remedy employed to rectify the deprivation of adequate assistance of counsel. Thus, courts, motivated by a concern for finality of results and judicial economy, have been reluctant to set aside convictions when confronted with this type of claim. This is particularly true in cases where they conclude, upon a review of the record in its entirety, that a valid determination of guilt was reached after the accused received a fair trial—despite the alleged deficiencies of counsel. Consequently, the courts have sought to discourage insubstantial Sixth Amendment counsel claims and to minimize the burden thereby imposed on judges and attorneys by erecting a strict standard for reversal on this basis and a concomitant low standard of performance by defense counsel.

A second rationale centers on avoidance of evaluation by hindsight. Courts reviewing claims of ineffective counsel have sought to avoid the posture of second-guessing the performance of attorneys at trial. The results reached at trial in many instances turn not only on the law of the case but also on the strategy employed by counsel. Many alternative tactics are often available to defense attorneys, and their actions often are the products of strategic choices made on the basis of their subjective assessment of the circumstances existing at trial. Claims of ineffective assistance of counsel, in the view of many courts, in substance represent mere requests by defendants for the courts to substitute their judgments on such matters for that of defense counsel. Thus, courts have refused to opine, based upon a retrospective review of the record, as to what counsel should have done under a given set of circumstances. *Mitchell v. United States, supra* at 62–63, 259 F.2d at 792–93; 78 Harv.L.Rev. at 1448–50.

Third, courts have adopted a standard of review requiring only infrequent reversals in order to avoid giving convicted defendants a second chance for acquittal. Courts express concern that such defendants, at their retrials, could profit from the tactical mistakes made at the first trial by employing different tactics—especially after they have had the benefit of judicial elucidation on the matter. *Mitchell v. United States, supra* at 63, 259 F.2d at 793; Bines, *supra* at 940.

In contrast, when claims of ineffective assistance of counsel based on lack of preparation, communication or other substantial reason, are asserted pretrial, different considerations prevail. A defendant's assertion of a pretrial claim of ineffectiveness presents the trial judge with the opportunity to take steps to eliminate any deficiencies in the representation of counsel before the resources of the judicial system have been invested in a full-blown trial. In such situations, trial judges may deter ineffective defense advocacy at the outset and eliminate the advantage gained therefrom

by the government to the detriment of our adversary system of justice. The disposition of such claims, raised pretrial, may serve as an alternative to the traditional post-conviction focal point for control of the quality of defense advocacy, and may serve to minimize or expedite the disposition of the number of ineffective assistance claims. As such, timely judicial intervention at the pretrial stage constitutes an effective mechanism for the *prevention* of Sixth Amendment deprivations and for the simultaneous preservation of the integrity of the adversary trial process.

Furthermore, while the above-enumerated concerns attendant upon the traditional standard of review are valid when inadequacy of counsel claims are raised post-conviction, they are absent, or certainly less compelling, when considering pretrial claims of ineffective representation. ·Because the proceedings have not concluded, conviction at trial is eliminated as a possible motivation for such claims. Although it is possible that defendants may attempt to use these claims as delaying tactics, it is more likely that they are prompted by a desire to obtain an adequate defense. An accused's basic interest in this regard is congruent with society's interest in insuring that the government proves his guilt beyond a reasonable doubt. This goal is best served when the government's proof is vigorously tested by the skills of an effective defense advocate—not when the government wins in essence by default because of ill-prepared defense counsel. Unlike many other issues of trial advocacy, issues such as the lawyer's pretrial preparation are susceptible to reasonably objective determinations. The trial court is not required to evaluate the strategic options open to an attorney, to substitute its personal opinions for that of defense attorneys, or to other-wise engage in speculative judgments. It is required only to ascertain the concrete steps taken by counsel in preparation of the case and to evaluate their sufficiency under the circumstances.

██ "[A]dequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom." *Moore v. United States,* 432 F.2d 730, 735 (3d Cir. 1970). A trial court's primary duty under the Sixth Amendment when confronted with a pretrial claim of inadequate preparation and consultation by counsel is to decide whether counsel has consulted with the defendant and prepared his case in a proper manner. We think that in executing this duty in the pretrial context the fundamental interests which the Sixth Amendment seeks to protect dictate that the trial courts apply a comprehensive standard of competence in reviewing pretrial claims of ineffectiveness, and that the standard need not be the same as that which applies to post-trial claims. *See* note 3 *supra.* We therefore adopt the *McMann v. Richardson* standard of performance—*i. e.,* that effective representation by counsel is that which is "within the range of competence demanded of attorneys in criminal cases," *id.,* 397 U.S. at 771, 90 S.Ct. at 1449—as the proper criterion by which pretrial claims of ineffective assistance of counsel are to be measured.[4]

### III

██ Serious allegations of an indigent defendant that appointed counsel is giving inadequate representation should not be taken lightly. The courts cannot give with one hand an indigent defendant the right to appointed counsel and then, with

---

4. Although many courts still purport to adhere to the mockery standard of review of ineffective assistance claims, we note that modern courts have evinced a significant trend away from application of that test in the post-conviction context in favor of stricter standards of counsel competence. Strazzella, *supra* at 450–52. A number of courts, while recognizing the legitimacy of the above-stated factors underly-ing the traditional test, have nevertheless rejected that standard, and have adopted the *McMann* standard for the performance of criminal defense advocates—or its substantial equivalent—even in the post-conviction setting. *See generally* Annot., 26 A.L.R.Fed. 218 (1976). In light of our holding in Section II, *supra,* we have no occasion to reexamine our *Angarano* standard in this case.

the other hand, effectively take that right away by refusing to recognize the possibility that the defendant's allegations of inadequate representation might prove correct after *detailed* inquiry. [*United States v. Morrissey,* 461 F.2d 666, 669–70 n. 6 (2d Cir. 1972) (emphasis added).]

This principle applies with equal force to defendants represented by privately retained counsel. When a defendant makes a pretrial challenge to the effectiveness of counsel—whether court-appointed or retained—and requests the appointment of new counsel on the ground that counsel, due to lack of investigation, preparation, or other substantial reason, is not rendering reasonably effective assistance, the trial court has a constitutional duty to conduct an inquiry sufficient to determine the truth and scope of the defendant's allegations. *United States v. Young,* 482 F.2d 993 (5th Cir. 1973); *Sawicki v. Johnson,* 475 F.2d 183 (6th Cir. 1973); *United States v. Morrissey, supra; Brown v. Craven,* 424 F.2d 1166 (9th Cir. 1970); *Brown v. United States,* 105 U.S.App.D.C. 77, 264 F.2d 363, 367–69 (en banc) (Burger, J., concurring), *cert. denied,* 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262 (1959). *Cf. Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (failure to grant separate attorneys to codefendants although requested); *Thornton v. United States,* D.C.App., 357 A.2d 429, *cert. denied,* 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976) (failure to inquire into the basis for counsel's motion to withdraw); *United States ex rel. Martinez v. Thomas,* 526 F.2d 750 (2d Cir. 1975) (error to permit defendant to proceed *pro se* without on-the-record inquiry into reasons for defendant's dissatisfaction with counsel); *United States v. Seale,* 461 F.2d 345, 356–61 (7th Cir. 1972) (error to refuse continuance until retained trial counsel could appear). Moreover, the

trial court must make appropriate *factual findings* on the record with respect to the asserted claim of ineffectiveness.[5]

If a court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, or if on discovering justifiable dissatisfaction a court refuses to replace the attorney, the defendant may then properly claim denial of his Sixth Amendment right. [*United States v. Calabro,* 467 F.2d 973, 986 (2d Cir.), *cert. denied, Tortorello v. U. S.,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587 (1973) (citation omitted).]

▮ We are aware of and sensitive to the tension inherent in the trial court's difficult tasks of assuring compliance with the Sixth Amendment directive that defendants be provided with the effective assistance of counsel while at the same time preserving the efficient and orderly administration of criminal justice. Hence, we do not mean to suggest by our holding today that new counsel must be provided any time a defendant makes such a request, or that trial judges are obliged to tolerate dilatory and manipulative tactics on the part of defendants calculated to disrupt and to delay the trial process. We do stress, however, that allegations of the inability of counsel to render effective assistance at trial due to lack of preparation rise to the level of a claim of a Sixth Amendment deprivation. In that situation, it is incumbent upon the trial court to determine the validity of the assertions and to take whatever course of action is thereby mandated. Courts must remain ever mindful that "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964) (citation omitted).[6]

5. Such inquiry by the trial court into the source of a defendant's dissatisfaction with his counsel may be effectively utilized by the trial court in discharging its duty to maintain appropriate standards of performance by defense attorneys—thereby obviating later claims of ineffective assistance of counsel.

6. The holding in this regard is not inconsistent with our holdings in *Harling v. United States,* D.C.App., 382 A.2d 845 (1978), and *Gressette v. United States,* D.C.App., 256 A.2d 418 (1969), or with *United States v. Oliver,* 187 U.S.App. D.C. 230, 571 F.2d 664 (1978), *McGill v. United*

■ In setting forth guidance as to the nature and scope of the necessary inquiry, we consider it unwise and unnecessary to set forth a formularized series of questions which trial judges must mechanically recite to counsel whenever they are confronted with these types of allegations. Rather, we think that the precise scope of the inquiry undertaken is necessarily dependent upon the circumstances presented in each individual case, and thus must be committed to the sound discretion of the trial court. However, the proper scope of such inquiry must be formulated in accordance with the general standards of representation set forth in Section II, *supra*. As succinctly stated by the U.S. Court of Appeals for the Fourth Circuit:

> Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial. [*Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968) (footnote omitted).]

*See also, e. g.,* ABA Standards Relating to the Defense Function, especially §§ 3.1, 3.2, 3.6, 3.8, 4.1, 5.1 (Approved Draft 1971); ABA Code of Professional Responsibility, Canon 6 & Disciplinary Rule 6–101(A) (1971); *Hampton v. United States,* D.C. App., 340 A.2d 813, 817–18 (1975); *United States v. Moore,* 180 U.S.App.D.C. 227, 554

States, 121 U.S.App.D.C. 179, 348 F.2d 791, 794–95 (1965), or *Brown v. United States, supra,* cited to us by the government. In those cases, as in this one, the defendants made eve-of-trial motions for continuance of trial in order for private counsel to replace appointed counsel. In each case, the trial court's denial of the motion was upheld on appeal. However, the critical factor which distinguishes the case *sub judice* from those cases is that there the de-

F.2d 1086 (1976); *Stokes v. Peyton,* 437 F.2d 131, 136–37 (4th Cir. 1970).

■ Whatever the exact contours of its investigation, the trial court must put to defense counsel (and to the defendant, if necessary)—*on the record*—specific questions designed to elicit whether or not the above-stated criteria of professional competence have been met. It then must make the requisite and appropriate findings of fact *of record* sufficient to permit meaningful appellate review on the issue of the ability and preparedness of counsel to render effective assistance under the prevailing circumstances.

Our review of such an inquiry will focus—as must the trial court's—on the situation existing at the time of the inquiry. We reject the argument advanced by the government that we should apply the post-trial test (*i. e.,* a post-trial retrospective look applying the *Angarano* standard) in evaluating the prejudicial impact of error in the disposition of pretrial claims of ineffective assistance of counsel.

The trial court's action here fell short of its obligation to conduct a proper inquiry into whether or not defense counsel had adequately prepared for trial and was capable of providing appellant with effective representation. No substantive inquiry was made to elucidate from counsel information to rebut, or substantiate, the specifics of appellant's complaint. The trial court therefore ruled on appellant's motion merely on the basis of his "naked request," and in so doing, committed error.

■ What was said in *United States v. Woods,* 487 F.2d 1218 (5th Cir. 1973), with regard to a comparable situation bears repeating:

> fendants failed to articulate any substantial basis for dissatisfaction with their attorneys in support of their requests for continuances. They merely requested a change in counsel. The type of searching inquiry that we hold should have been conducted in this case thus was not necessitated under the facts of those cases. *See also Commonwealth v. Flowers,* 365 N.E.2d 839 (Mass.App.1977).

[The defendant's] objection to his lawyer went to the issue of the preparation of counsel, not his sheer presence or basic competence, yet the trial judge accorded dispositive weight to the fact that appointed counsel was a highly competent attorney who was present to defend [the accused]. Despite there being perhaps some salutary effect from the mere presence of a competent attorney available to a defendant in a criminal proceeding, physical presence alone fails to satisfy the mandate of the Sixth Amendment. It is now firmly established that the right to counsel means no less than the right to effective counsel. As this court has observed, "an attorney cannot render reasonably effective assistance unless he has acquainted himself with the law and facts of the case." [*Id.* at 1219–20 (citations omitted).]

Appellant's claims of inadequacy of counsel were of sufficient gravity and specificity to require meaningful inquiry into their validity.

## IV

Unless a deprivation of the right to effective representation is shown after proper inquiry, measured by the pretrial standards we have set forth herein and evaluating the circumstances existent at the time of the pretrial inquiry, the decision as to whether a continuance should be granted in order to allow the procurement of new counsel for a defendant who is dissatisfied with his counsel is a matter addressed to the sound discretion of the trial court. *Brown v. United States, supra; United States v. Young, supra; United States v. Calabro, supra.* Its ruling will be disturbed on appeal only if the court has abused its discretion. "While courts must be assiduous in their defense of an accused's right to counsel, that right may not be 'manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.'" *United States v. Calabro, supra* at 986 (citation omitted). *Accord, Harling v. United States,* D.C.App., 382 A.2d 845 (1978); *United*

*States v. Young, supra; United States v. Llanes,* 374 F.2d 712, 717 (2d Cir.), *cert. denied,* 388 U.S. 917, 87 S.Ct. 2132, 18 L.Ed.2d 1358 (1967).

In the case at bar, the trial court, when confronted with appellant's allegations of appointed counsel's lack of consultation with him and lack of preparation, responded by recounting the two consultations between appellant and his defense counsel of which the court had knowledge— one session the week prior to trial, and another the day before trial. The court further stated that it was familiar with appointed counsel, who had appeared before the court on several occasions, and thus had no reason to doubt his competence. Beyond the bare fact that appellant had twice conferred with his attorney, the trial court had no other "meaningful basis for evaluating the preparation and industry of counsel as a result of . . . counsel's own statements or [otherwise]." *United States v. Woods, supra* at 1220. The trial court's denial of appellant's motion to change counsel was premised on its view that since defense counsel was a generally competent attorney, he *ipso facto* was able to render adequate assistance to appellant *in this case* —as we have said, an improper basis on which to predicate such a conclusion. Without more than the cursory colloquy that transpired between appellant and the trial court on the quality of representation counsel was prepared to give, the court's omission of meaningful inquiry into appellant's claim, in our view, would normally constitute reversible error. However, we hold that reversal is not required in this case because of the *sua sponte* declarations by defense counsel on the record (albeit after the trial court had already denied the motion) as to the steps he had taken in the preparation of appellant's defense and the consultations he had had with appellant. The record reflects that the same counsel appointed to defend appellant at presentment represented him throughout the criminal prosecution. Thus, in addition to conferring with appellant on the two occasions immediately prior to trial previously noted,

appellant at least had the opportunity to confer with counsel theretofore during his other court appearances prior to trial. Counsel stated that he had obtained a copy of the grand jury testimony and a copy of the statement made by appellant's co-defendant all of which, he stated, he had shown to appellant. He further stated that appellant had not offered him the names of any witnesses who could be called on his behalf. Jahnrett, the victim of appellant's offenses, had identified appellant as his assailant from a photographic array and from a line-up, and was to be called as the government's chief witness. Thus, the government's evidence of appellant's guilt, viewed pretrial, was strong. No credible defense was suggested by the circumstances of the case; nor, apparently, did appellant offer such to his defense counsel. Counsel so indicated in stating to the court, "If there is anything that he wanted in reference to this trial, legally, if I could do it for him, I would do it for him."

We discern no basis on which the preparation of appointed defense counsel or his consultations with his client could be considered constitutionally defective, applying the *McMann v. Richardson* standard, and therefore conclude that there is sufficient evidence on the record to sustain the ruling of the trial court in spite of the court's failure to make a proper inquiry before ruling. We are satisfied that the error of the trial court in failing to conduct an appropriate inquiry, as is constitutionally mandated, was "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

No pretrial Sixth Amendment violation having been shown, appellant's motion, in the final analysis, amounted to no more than an eleventh-hour motion for a continuance based on a preference for new counsel not yet obtained. Such a request is addressed solely to the sound discretion of the trial court. We conclude the trial court did not abuse its discretion in denying appellant's last minute motion for a continuance, for appellant had failed to demonstrate any substantial reason therefor. Accordingly, the judgment of conviction is

*Affirmed.*