**Mary E. GORDON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 88–369 and 89–925.**

District of Columbia Court of Appeals.

Argued Oct. 3, 1990.
Decided Nov. 29, 1990.

M. Elizabeth Kent, appointed by this court, for appellant.

Christopher Reese, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., Eric M. Acker, Sherri L. Schornstein and Silvia L. Gonzalez, Asst. U.S. Attys., were on the briefs, for appellee.

Before ROGERS, Chief Judge, and TERRY and STEADMAN, Associate Judges.

ROGERS, Chief Judge:

Appellant appeals from her conviction by a jury of distribution of phencyclidine (PCP) and marijuana under D.C.Code § 33–541(a)(1) (Supp.1990), and the denial of her motion under D.C.Code § 23–110 (1989), on the grounds that the trial court failed to conduct a proper *Monroe–Farrell* inquiry and improperly denied a mistrial and that she was denied the effective assistance of counsel. Finding these contentions unpersuasive, we affirm.

I

In contending that the trial judge failed to conduct a proper *Monroe–Farrell* inquiry in response to pretrial complaints about appointed counsel, appellant contends that the trial judge ignored the fundamental issue, namely, that appellant's confusion about her case arose from counsel's ineffective assistance. She urges that this court adopt a *per se* rule requiring automatic reversal of a conviction when the failure to conduct a *Monroe–Farrell* inquiry is coupled with serious allegations of ineffective assistance of counsel. Alternatively, she urges that where there is a pretrial claim of ineffective assistance of counsel all claims of ineffective assistance should be judged by the more lenient pretrial standard of review. We need not reach appellant's requests since we conclude that the trial judge's inquiry was adequate.

For over a decade the court has made clear that when a criminal defendant complains pretrial about the performance of counsel, the trial judge must make an on-the-record inquiry to elicit whether or not the criteria of professional competence have been met and make findings of fact sufficient to permit appellate review of the ability and preparedness of counsel to render effective assistance. *Monroe v. United States*, 389 A.2d 811 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). The inquiry is important at the pretrial stage, when the defendant's complaints do not reflect disappointment with an unfavorable verdict and the trial judge can evaluate counsel's performance in light of objective criteria, preventing a subsequent mistrial and collateral proceedings. *Id.* at 818–19. Therefore, the trial judge is required to conduct a detailed inquiry, going beyond routine questions, to elicit the nature of the defendant's complaint, and whether it is based in fact. *Farrell v. United States*, 391 A.2d 755, 762 (D.C. 1978); see also *Matthews v. United States*, 459 A.2d 1063, 1066 (D.C.1983).

Defense counsel advised the trial judge prior to trial that appellant was "in a very disagreeable mood," apparently because her clothing had been burned overnight so that she was unable to wear civilian clothing to court, and because she was upset with counsel. Counsel stated that appellant "had some complaints to air with the Court before we proceed," and as a result appellant was brought before the trial judge to discuss the matter. Appellant appeared and told the trial judge that

she did not "feel like my lawyers in the best of my defense."[1] In response to the judge's question about what complaints she had about her lawyer, appellant responded that she did not "have a full understanding" of her case, and that although she had advised her attorney of her version of what had happened, she did not "have too much word from him." In further response to questions from the judge to clarify her complaints about her lawyer, appellant stated that he had told her to go to the law library and she had looked up her case and she had asked him about a bond motion. The judge explained that these matters did not have to do with the trial and asked appellant to explain what she did not understand about what was going on now. Appellant said she did not understand the procedures of the trial. The judge asked her what she did not understand. Appellant said she had only spoken twice with her counsel but was being asked repeatedly whether she wanted to go to trial. In response, the judge stated that she had received appellant's letter but did not understand her questions, and that if she, the judge, could not understand, then counsel probably did not understand either, and asked appellant to be more specific.

Appellant then asked if she would have an opportunity to change her plea. The judge explained she would but only if she was sure that was what she wanted to do. Appellant also asked the judge if the fact that she was present while the charged drug transaction occurred would make her guilty. The judge explained that presence alone was insufficient to prove her guilt. Appellant said she understood, but was unclear about her past convictions. The judge explained that the convictions could be taken into consideration at sentencing if appellant was found guilty, causing her sentence to be doubled, and could also affect whether appellant would testify since the government could ask her about her convictions if she did testify. The judge then inquired what else appellant did not understand, and appellant explained that she had been unclear only about the plea

procedure and the repeat papers. The judge explained further about pleading guilty and appellant said she was satisfied. In reply to the judge's questions, appellant stated that she wanted to go forward with the trial and would keep her defense counsel.

In sum, the record shows that the judge gave appellant a full opportunity to advise the court of any concerns about defense counsel, and that appellant was eventually able to articulate for the judge what was troubling her, making clear that her concerns related to the trial, specifically, the plea, whether mere presence was evidence of guilt, and the repeat papers. She expressed no hesitancy when the judge inquired if she had any more problems or questions that appellant wanted defense counsel to address; appellant told the judge that there were none and that she wanted to go to trial and would keep her defense attorney. The judge's observations, that unless appellant could be specific neither counsel nor the court could assist her, and the colloquy, make clear that appellant's concerns did not reveal a basic concern about defense counsel but about procedures that remained troubling despite what defense counsel may have said. Under the circumstances we find no deficiency in the trial judge's inquiry of appellant.

Although the judge did not ask questions of defense counsel, the matters of concern to appellant were explained to her by the trial judge, and appellant expressed satisfaction with the judge's explanations. Nothing in the record suggests that appellant remained confused about the matters of concern to her or that she was cut off from presenting all of her concerns to the trial judge. Nor do appellant's responses to the trial judge suggest that she was raising the types of complaints about defense counsel that have caused this court to conclude that a trial court's response to a defendant's complaint was inadequate. *See, e.g., Bass v. United States,* 580 A.2d 669, 670–71 (D.C.1990) (complaint that attorney was not investigating case properly

---

1. Appellant also complained that the Marshal kept telling her every day that she was going to jail and how he was going to treat her, had thrown food at her and kept harassing her.

required *Monroe–Farrell* hearing, not merely a letter replying to defendant's mother that she could retain counsel for her son). Accordingly, we hold that the trial judge's inquiry was proper since appellant's complaints provided no basis for the judge to inquire further into the attorney-client relationship or about defense counsel's preparation for trial.

## II

Appellant also contends that the trial judge erred in refusing to grant a mistrial after a prosecution witness repeatedly referred to appellant's red jail arm band. At trial Sergeant Bobby Joe Parker, who had assisted in appellant's arrest, identified appellant during his testimony by the red arm band she wore. Appellant states in her brief that this band "arguably revealed her custodial status." She further maintains that the trial judge was wrong as a matter of fact, logic, and law in concluding that if the jurors did not already know that appellant was locked up, as a result of the fact that she appeared in her prison jumpsuit the day before, they would not know it as a result of Parker's testimony.

■ In *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the Supreme Court held that a defendant cannot be compelled to appear before a jury in prison garb because of the destructive effect such an appearance could have on the presumption of innocence. However, in the absence of an objection by the defendant to being brought before the jury in prison clothing, the court will infer that the appearance in prison clothing was not compelled. *Id.* at 512–13, 96 S.Ct. at 1696–97; *see also Khaalis v. United States*, 408 A.2d 313, 336 (D.C.1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980). In that situation, appellant bears the burden on appeal to demonstrate that her appearance in prison clothing caused

prejudice. *Watts v. United States*, 449 A.2d 308, 311 (D.C.1982).

■ Appellant appeared in court in prison clothes the day before Sergeant Parker testified and she did not object nor ask for a continuance so that she would be able to appear in court in civilian clothes. When defense counsel moved for a mistrial the next day, following Parker's third reference to the red arm band, the trial judge observed that counsel was "making a very large assumption ... that the Jury [*sic*] knows what the significance of this red arm band is." Counsel has not explained on appeal how the trial judge's observation was in error. At oral argument counsel informed this court that the arm band was, in fact, a narrow wrist bracelet. Thus, the references to the arm band were less prejudicial than the jail attire in *Estelle. See Watts v. United States, supra,* 449 A.2d 308. We find no abuse of discretion by the trial judge in denying a mistrial. *See Wesley v. United States,* 547 A.2d 1022, 1029 (D.C.1988).

## III

Finally, appellant contends that she was denied the effective assistance of counsel as a result of a number of alleged deficiencies by defense counsel.[2] Claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a defendant to prove that counsel's performance fell below minimal standards, and that but for counsel's inadequacies, there is a reasonable possibility that the outcome of the case would have been different. *Id.* at 687, 104 S.Ct. at 2064. "Judicial scrutiny of counsel's performance must be highly deferential," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at

2. These deficiencies include belated discovery and investigation; failure to explain appellant's custodial status at trial; failure to consult with appellant before trial; inadequate opening statement, closing argument, and cross-examination of government witnesses; failure to prepare appellant to testify and to call necessary defense witnesses; failure to request cautionary instructions on the use of prior convictions; failure to object to jury instructions on aiding and abetting; and failure to argue to the trial judge that appellant was eligible for addict exception sentencing.

689, 104 S.Ct. at 2065. The reasonableness of counsel's actions may depend largely on what information is provided by the defendant and what strategic choices are made by the defendant. *Id.* at 691, 104 S.Ct. at 2066. Moreover, a defendant must show prejudice by demonstrating a reasonable probability that but for counsel's error the result would have been different. *Id.* at 694, 104 S.Ct. at 2068.

The record does not support appellant's claims that counsel was deficient in timely completion of discovery or in his decision not to file pretrial motions or to call more than one witness. *See Proctor v. United States*, 381 A.2d 249, 251 (D.C.1977). Complaints about failure to adequately explain aiding and abetting and the significance of repeat papers were addressed by the trial judge prior to trial, and appellant thereafter indicated that she wished to keep defense counsel and was ready to go to trial. Her complaint that counsel only spoke to her twice is hardly evidence of ineffective assistance in view of the relatively simple nature of the facts in this case.[3] Moreover, appellant's statement to the trial judge, that she had told defense counsel over and over again what had happened, belies a claim that she lacked ample time to confer. The record also belies the claim that counsel did not advise appellant of the impact of her prior convictions, and in any event, this too was explained by the trial judge to appellant's satisfaction before she agreed to keep her counsel. Nor does the record support either her contention that she was unprepared to testify or her general claim, without specifying the witness, that counsel did not conduct adequate cross-examination. Furthermore, the testimony of the two witnesses who appellant contends should have been called would not have proved useful in her defense since their affidavits indicate that they did not observe the events in question, and thus, counsel's decision not to call them was a reasonable tactical decision. Appellant's other contentions, except one, are belied by the record or frivolous.[4] The only claim that requires brief comment concerns the error of defense counsel in stating that appellant would be ineligible for addict exception sentencing under D.C.Code § 33–541(c)(2) (Supp.1990).

At sentencing defense counsel stated that appellant was ineligible for the addict exception because she had maintained her innocence throughout trial. The prosecutor promptly corrected the mistake, *see Brandon v. United States*, 553 A.2d 640, 643 (D.C.1989); *Banks v. United States*, 516 A.2d 524 (D.C.1986), *cert. denied*, 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 483 (1987), and defense counsel then argued that appellant's prior conviction was not disqualifying. During the hearing on appellant's motion pursuant to D.C.Code § 23–110, the judge stated that she had incorrectly found appellant ineligible for the addict exception based on appellant's denial of involvement in the charged conduct and, accordingly, would reconsider that decision if appellant could make a sufficient evidentiary showing. Appellant did not appear at the hearing and has not subsequently made any such showing, not even a proffer on appeal, that she was otherwise eligible. *See Grant v. United States*, 509 A.2d 1147, 1154 (D.C.1986) (defendant has burden to demonstrate her eligibility for the addict exception); *see also Strickland, supra,* 466 U.S. at 694, 104 S.Ct. at 2068. Thus, she has failed to show any prejudice. Furthermore, appellant's counsel conceded at oral argument that for

---

3. The evidence at trial showed that on August 22, 1987, an undercover officer drove into the alley of the 200 block of 58th Street, N.E. Calling out to several bystanders, she inquired whether there was any "boat out." Appellant responded affirmatively, called out, and two men appeared. Appellant said to Louis St. John, "Let me get one," and he passed a tinfoil packet to the second man, who passed it to appellant, who gave it to the officer. The tinfoil appeared to be marijuana laced with PCP. The officer requested and received a second tin.

The substance field-tested positive as cannabis, and appellant and St. John were arrested. Marked police funds were discovered in St. John's possession. Appellant's defense was innocent presence, and she denied observing a drug transaction.

4. Nor do we find the requisite prejudice as a result of the multiple claims. *See Hockman v. United States*, 517 A.2d 44, 52 (D.C.1986).

all practical purposes the issue is moot since appellant has already finished serving the mandatory minimum sentence.

Accordingly, we affirm the judgment of conviction and the order denying the § 23-110 motion.