Charles OLIVER, Appellant

v.

UNITED STATES, Appellee.

No. 00–CM–1359.

District of Columbia Court of Appeals.

Submitted April 3, 2003.
Decided Sept. 11, 2003.

Mark A. Cotton, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Barbara J. Valliere, Seth B. Waxman, and Charles D. Stimson, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of simple assault after a non-jury trial. On appeal he contends that the trial court erred in denying the request of his court-appointed counsel for leave to withdraw from the case, made on the morning of trial, and that his counsel was ineffective for failing to call more than one witness (appellant himself) to testify for the defense. We affirm.

I

During the evening of May 6, 2000, eighteen-year-old Yunxu Chen and his older brother [1] were making deliveries for their father's carry-out restaurant. Mr. Chen testified that after one delivery his brother, who was driving, struck appellant's car while trying to back out of a parking space. After the two cars collided, appellant got out of his car, came over to Yunxu Chen, who was sitting in the front passenger seat, and punched him in the head. Mr. Chen's brother promptly called his mother and younger sister at home and told them what had happened, and the sister called the police.

Metropolitan Police Officer Daniel Traver arrived at the scene within minutes, and Mr. Chen told him he had been struck by appellant. Officer Traver testified that he saw swelling and blood on the side of Chen's face as well as an abrasion and a cut on appellant's left index finger. Officer Paul Newsham, who arrived a few moments later, also testified that Mr.

---

1. The brother did not testify and was never identified by name during the trial.

Chen's face was swollen and bleeding and that appellant had a cut on his hand. Appellant was thereupon arrested and taken to the police station.

Testifying in his own defense, appellant stated that after the two cars collided, Mr. Chen got out of his car and started towards him while flailing his arms and speaking loudly in a foreign language. Appellant said that he thought Mr. Chen was upset and felt it necessary to defend himself by punching him in the forehead.

The trial court found appellant guilty, expressly crediting the testimony of Mr. Chen and the two officers. The court specifically discredited appellant's testimony that Mr. Chen behaved aggressively and that appellant had to act in self-defense.

## II

Just before the trial began, the following conversation took place between the court and counsel:

MR. WINGERTER [defense counsel]: Your Honor, we have a problem with the following. He, Mr. Oliver, is diversion eligible. Unfortunately, only when we talked about discovery did I realize that he's diversion eligible.

THE COURT: I'm not going to continue the case for that reason. Is there any other reason?

MR. WINGERTER: No, actually his supervisors told him that he couldn't do diversion now anyway.

THE COURT: Okay.

MR. WINGERTER: But the bottom line, but for my failure to tell him about the diversion program, he was signed up and—

THE COURT: Sounds like it's moot if a supervisor said he wasn't eligible.

MR. WINGERTER: Well, no, he's only ineligible because we're asking at this late date.

MR. WAXMAN [the prosecutor]: Your Honor, just so the record is clear, among [*sic*] the late time of requesting diversion, the proffer the defense counsel has given me as to the defendant's version of events would not make him eligible in any event.

THE COURT: Okay.

MR. WAXMAN: So it's not necessarily just the late timing of the request which is a problem for the government. It's also the proffer that he gave would not make him eligible at any point in time.

THE COURT: Okay.

MR. WINGERTER: I don't believe that's true.

THE COURT: Well, he's the prosecutor, and he, it's their office that makes the decision about whether or not a person is going to get into the diversion program, and that's what he is representing. I don't think we can tell him who, whether based on the defendant's version, they're willing to accept the individual.

\*   \*   \*   \*   \*   \*

MR. WAXMAN: I've talked to my supervisor ... and had a conversation about this, and he has indicated to me that we're not prepared to go forward on diversion. I'm happy to proffer to the court the reason for the (indiscernible) facts or the defense proffer, why that does not make him eligible in the government's opinion.

Specifically, the defendant claims that he acted in self-defense and, therefore, is not taking responsibility for what the government alleges happened. And so, if he had made that claim three weeks ago or four months from now, it wouldn't make a difference. He'd have

to accept responsibility for the government's allegations.

THE COURT: Okay. Well, it looks like we're going to be ready to go to trial. Any other issues, counsel?

MR. WINGERTER: Just this one, but again I formally ask to withdraw based on my failure to advise him early on that diversion was [available].

THE COURT: Your request is denied.

Appellant now claims that because his counsel failed to advise him of the option of the diversion program,[2] counsel was ineffective and therefore should have been permitted to withdraw moments before trial. We hold that the court, after considering the proffered reasons for defense counsel's request to withdraw, correctly denied his motion.

■ "The decision to grant or deny a motion by an attorney to withdraw as counsel is committed to the discretion of the trial court." *Crane v. Crane*, 657 A.2d 312, 318–319 (D.C.1995). Accordingly, when considering whether an attorney's motion to withdraw was properly denied, this court will review that denial only for abuse of discretion. In general, in the absence of substantial prejudice to the other party or unnecessary delay, an attorney should be allowed to withdraw if there has been "a complete breakdown" in the attorney-client relationship. *Atlantic Petroleum Corp. v. Jackson Oil Co.*, 572 A.2d 469, 473 (D.C.1990). However, Super. Ct. Civ. R. 101(c)(4), made applicable to criminal cases by Super. Ct.Crim. R. 57(a), states, "The court may deny an attorney's

motion for leave to withdraw if the withdrawal would unduly delay trial of the case, be unduly prejudicial to any party, or otherwise not be in the interests of justice." Relevant factors include the reasons for the request, "the delay between the cause of the [client's] dissatisfaction and the request," the proximity of the trial date and the likelihood that the trial may have to be postponed, and "the general dictates of fairness" to both the defendant and the government. *McKoy v. United States*, 263 A.2d 645, 648 (D.C.1970); *see Bond v. United States*, 310 A.2d 221, 225 (D.C.1973).

■ Defense counsel's motion to withdraw in this case was properly denied for two reasons. First, counsel's withdrawal would have prejudiced the government by needlessly delaying the trial; the delay, moreover, would have interfered with the court's calendaring of other cases. Second, and more tellingly, even if counsel was remiss in failing to discuss the diversion program with appellant, that did not matter because appellant was not eligible for diversion.

Counsel did not tell the court that he wished to withdraw until the case was called for trial. If the court had granted the motion, the government would have been prejudiced, since it was prepared for trial and had three witnesses waiting to testify. A new attorney would have had to be appointed, thereby postponing the trial for an uncertain length of time.

More importantly, appellant was not eligible for the diversion program. The

---

**2.** The diversion program, as explained in *Fedorov v. United States*, 600 A.2d 370 (D.C. 1991) (en banc), is a program offered to certain "first-time offenders with no significant arrest record" who are charged with a misdemeanor or an offense not involving the use of force or violence. Defendants who are accepted may be required to complete forty

hours of community service or to provide restitution instead of being imprisoned or put on probation. In exchange, the government enters a *nolle prosequi* instead of bringing the defendant to trial. By successfully completing the required service, the defendant avoids having a criminal conviction on his record. *See id.* at 372 n. 3.

prosecutor made clear to the court that because appellant claimed to have acted in self-defense and thus failed to take responsibility for his actions, he was ineligible for diversion.[3] Therefore, even if we assume that counsel should have informed appellant of the diversion program, his failure to do so was of no consequence.

▮ Appellant also claims that the trial court violated the principles of *Monroe v. United States*, 389 A.2d 811 (D.C. 1978), and *Farrell v. United States*, 391 A.2d 755 (D.C.1978), by failing to make an adequate inquiry into why defense counsel sought to withdraw. It is by no means clear, however, that a *Monroe–Farrell* inquiry was even warranted here. Such an inquiry is usually required when either the defendant or his counsel raises the issue of counsel's possible ineffectiveness before trial. *See Monroe*, 389 A.2d at 819–821; *Farrell*, 391 A.2d at 760–761; *cf. Lane v. United States*, 737 A.2d 541, 547 (D.C. 1999) (defendant's "pre-trial claim of ineffective assistance, such as it was, arose in the context of a motion for a continuance"). Any claim of ineffectiveness must be specific and detailed; "[g]eneral assertions that a defendant wants a new lawyer are not enough to trigger a *Monroe–Farrell* inquiry." *Matthews v. United States*, 629 A.2d 1185, 1191 (D.C.1993) (citations and footnote omitted). In the present case, because there is nothing in the record to suggest that appellant voiced any dissatis-

faction with his counsel before trial, the government argues forcefully that *Monroe* and *Farrell* are not even relevant here.

▮ We need not decide the point, since the trial court, regardless of whether it was required under *Monroe* and *Farrell* to do anything at all, did in fact explore on the record counsel's reasons for seeking to withdraw. After finding out the reason for appellant's ineligibility, the court held that appellant's exclusion from the diversion program was the result of his self-defense claim, not of any failure by defense counsel to alert him about the program earlier. Thus, even assuming that a *Monroe–Farrell* inquiry was warranted, we hold that this discussion was sufficient to enable the court to ascertain just why defense counsel was seeking to withdraw. *See Lane*, 737 A.2d at 547–548; *Gordon v. United States*, 582 A.2d 944, 946–947 (D.C.1990).

### III

▮ Appellant also claims that because defense counsel failed to call any witnesses on his behalf other than appellant himself, he suffered from what amounts to ineffective assistance of counsel. Because there is nothing in the trial record to indicate that any witnesses other than appellant could have provided any testimony relevant to the defense, we reject this argument.[4]

3. Furthermore, appellant is precluded from challenging the government's denial of his eligibility into the diversion program. *See Wood v. United States*, 622 A.2d 67, 70 (D.C. 1993) (absent extreme circumstances, a decision to refer—or not to refer—a defendant to pre-trial diversion is a matter within the prosecutor's broad discretion); *Baxter v. United States*, 483 A.2d 1170, 1171–1172 (D.C.1984); *Irby v. United States*, 464 A.2d 136, 141 (D.C. 1983).

4. The generally accepted method of raising a claim of ineffective assistance of counsel is

through a post-trial motion to vacate sentence under D.C.Code § 23–110 (2001), which can enable a record to be made that may explain the reasons underlying counsel's actions before and during trial. *See generally Shepard v. United States*, 533 A.2d 1278, 1280 (D.C. 1987). Because appellant never filed such a motion, however, "the only issues properly before this court are those [appellant] raises on the basis of the record of trial." *Hall v. United States*, 559 A.2d 1321, 1322 (D.C.1989) (citation omitted).

In assessing whether counsel's performance was ineffective, this court reviews the record with a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Chatmon v. United States,* 801 A.2d 92, 107 (D.C.2002). In particular, "[t]rial tactical decisions generally do not result in a finding of ineffective assistance of counsel." *Zanders v. United States,* 678 A.2d 556, 569 (D.C.1996); *accord, e.g., Curry v. United States,* 498 A.2d 534, 540 (D.C.1985) ("mere errors of judgment and tactics as disclosed by hindsight do not, by themselves, constitute ineffectiveness"). Moreover, "the decision to call witnesses is a judgment 'left almost exclusively to counsel.'" *Smith v. United States,* 454 A.2d 822, 825 (D.C.1983) (citation omitted).

Under this deferential standard, we cannot conclude that defense counsel rendered ineffective assistance. The obvious reason why no witnesses were called is that no one besides Mr. Chen, his brother, and appellant witnessed the assault.[5] Appellant speculates that several "neighbors" at the scene could have been called, perhaps to clarify any disparity between his testimony and that of Mr. Chen. A close reading of the record, however, indicates only that some neighbors may have been present after the assault took place, but not while it was happening. Moreover, appellant filed no post-trial affidavits or other statements, sworn or unsworn, from any witness who either saw the altercation or could corroborate his version of the facts. *See Robinson v. United States,* 797 A.2d 698, 708 (D.C.2002) (without any proffer of testimony, the failure to call a witness does

not constitute ineffectiveness). As a result, appellant's claim of ineffective assistance must be rejected.

Appellant's conviction is therefore

*Affirmed.*

---

5.  Counsel would have had no reason to call Mr. Chen's brother as a defense witness, since it was more than likely that he would simply have echoed Mr. Chen's testimony about the assault.