*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-1209

PAZ CRUZ, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-3591-15)

(Hon. Geoffrey M. Alprin, Motion Judge)

(Submitted April 19, 2017                    Decided August 3, 2017)

*Gregory W. Gardner* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Anwar Graves*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER, BECKWITH and EASTERLY, *Associate Judges*.

BECKWITH, *Associate Judge*:   Appellant Paz Cruz, charged with simple

assault,[1] moved under D.C. Code § 24-607 (b) (2012 Repl.)[2] to be treated for alcoholism in lieu of being prosecuted. The trial court denied Mr. Cruz's motion, apparently relying on a Pretrial Services Agency (PSA) officer's representation that PSA had previously recommended "intensive outpatient treatment" and that Mr. Cruz had "said he [did not] want it." The record does not indicate what significance the trial court attached to the officer's representation or whether the court considered other factors in denying Mr. Cruz's motion. Concluding that the record is inadequate to demonstrate that the trial court properly exercised its discretion, we vacate the court's denial of Mr. Cruz's motion and remand the case for further consideration.

## I.

Two weeks before his scheduled trial date, Mr. Cruz, through counsel, filed a "motion for treatment in lieu of criminal prosecution." Mr. Cruz asserted that he would "voluntarily" submit to "treatment for chronic alcoholism," and asked the court to "conduct a civil hearing" to determine whether he qualified for alcoholism treatment in lieu of prosecution under D.C. Code § 24-607 (b). Mr. Cruz proffered

---

[1] D.C. Code § 22-404 (a)(1) (2013 Supp.)

[2] All subsequent D.C. Code citations, unless otherwise noted, are to the 2012 replacement set.

that PSA had "found that [he] is in need of treatment and [had] recommended intensive outpatient treatment," and he also proffered that "[t]here are adequate and appropriate programs, such as APRA,[3] that are able to provide such [treatment]." The government filed a memorandum in opposition to Mr. Cruz's motion, arguing that "civil commitment under § 24-607 should only be used in the rarest of occurrences" and that Mr. Cruz had failed to meet "the statutory requirements." The government specifically noted that Mr. Cruz had not proffered a "medical diagnosis" in support of his claim that he is a "chronic alcoholic."

The trial court heard argument on the motion at a subsequent status hearing. In response to the argument raised by the government in its opposition memorandum, Mr. Cruz's counsel acknowledged that Mr. Cruz had not received a medical diagnosis of alcohol dependency. Counsel represented, however, that Mr. Cruz was "willing to . . . [be] assessed" and requested that a hearing on Mr. Cruz's motion "be scheduled for another date to allow [counsel] to obtain an expert to conduct an analysis." The trial court questioned why Mr. Cruz had not already sought a diagnosis: "[I]t is a little difficult to walk in on the trial date,[4] although

---

[3] *See* D.C. Code § 7-3002 (1) (abbreviating "Addiction Prevention and Recovery Administration" as "APRA").

[4] The status hearing was held on the date originally scheduled for the start

(continued…)

you filed this a few days ago, and say we oughta have him—we oughta have the client examined by a medical doctor." Mr. Cruz's counsel responded that he had waited to seek relief under § 24-607 (b) because he had initially "tried to explore community service"—since Mr. Cruz did not have any prior convictions—but that this proposal had been "denied."[5] Counsel further explained that he had been trying to "conserve resources in getting an expert"—he did not want to expend funds on an expert if the court was going to deny the motion in any case.[6]

------

(…continued)
of the trial, and at the hearing, the trial court initially seemed unaware that the case was not going to proceed to trial on that day. The court expressed concern that Mr. Cruz's motion came "too late"—the court thought that granting Mr. Cruz's motion would inconvenience the government's witnesses by pushing back the trial date. After being reminded that the court had already converted the trial date to a status-hearing date and being informed that none of the government's witnesses were present, the court indicated that it was no longer concerned that Mr. Cruz had waited too long to file his motion: "[T]hat changes the matter for me." Mr. Cruz also pointed out that the trial date had already been continued once before—that time, because the government had not provided timely discovery. In total, approximately four months had passed between Mr. Cruz's arrest and the status hearing.

[5] The record does not reveal precisely what defense counsel meant by this, but he was likely explaining a failed attempt to enter into a deferred-prosecution arrangement with the government. *See Oliver v. United States*, 832 A.2d 153, 156 n.2 (D.C. 2003).

[6] Mr. Cruz's counsel stated, "My experience has been that when th[e] issue [of treatment in lieu of prosecution] is raised, . . . we've been allowed some time to obtain . . . the medical treatment or medical assessment as to whether or not [the

(continued…)

The prosecutor responded by arguing that Mr. Cruz's proposed treatment option, APRA, "does [not] do civil commitments." The prosecutor further represented that he had concerns about whether "Mr. Cruz . . . want[ed] to be civilly committed to [the] hospital for his chronic alcoholism." The prosecutor contended that "[t]his isn't just going to an outpatient treatment and going back home. This is civil commitment." Mr. Cruz's counsel responded that D.C. Code § 24-607 (b) did not require "commitment, *per se*," and that "in th[is] day and age what we're dealing with is treatment." Counsel acknowledged, however, that inpatient commitment "obviously . . . is an option if deemed necessary." The trial court noted that under § 24-607 (b), Mr. Cruz "could wind up in a hospital for" up to 180 days—the maximum sentence for simple assault—and asked, "[I]s that something he wants?" Mr. Cruz's counsel replied, "What he wants is treatment for his alcoholism."

The court stated that Mr. Cruz "can have treatment . . . through the regular criminal process" rather than through § 24-607 (b). The court asked a PSA officer who was present in the courtroom "what PSA offers in [a] situation like this." The

---

(…continued)
defendant] is a chronic alcoholic." Counsel represented that he had "done [a D.C. Code § 24-607 (b)] hearing[] once before with Judge [Harold] Cushenberry."

officer responded:

> The Defendant's assessment that he received previously indicated intensive outpatient treatment. So, that's the level, but below residential. And from my understanding[,] when the Defendant reported to our office, which he has continuously done, he's never taken up the opportunity to participate in treatment. He said he doesn't want it.

After hearing from the PSA officer, the trial court denied Mr. Cruz's motion. The court indicated that the general basis for the denial was the PSA officer's representation[7] but did not further elaborate.[8]

Mr. Cruz was later convicted of simple assault in a bench trial and given a sentence of ninety days in jail, suspended as to all but five days.

## II.

D.C. Code § 24-607 (b)(1)(A) provides that "[t]he [c]ourt may . . . commit to

---

[7] The court said, "Well, given that, . . . I think I would deny this motion."

[8] Mr. Cruz's counsel sensed that the court denied the motion on the basis that Mr. Cruz did not want treatment, and asked the court to reconsider: "[I]f [the PSA assessment] was back in March, . . . and we filed this motion [for treatment] several months later, I believe that . . . [Mr. Cruz] is entitled to change his mind if he wants to." The court responded that Mr. Cruz could "still possibly . . . get [treatment] in the context of the criminal case" and reiterated, without further explanation, that it was denying Mr. Cruz's motion.

the custody of the Mayor for treatment and care for up to a specified period of time a chronic alcoholic who . . . [i]s charged with any misdemeanor and who, prior to trial . . . , voluntarily requests such treatment in lieu of criminal prosecution." As this provision uses the permissive "may" rather than the imperative "shall"—and given the absence of contrary indicators in the text of the statute or in the legislative history—the decision whether to grant treatment in lieu of prosecution is committed to the discretion of the trial court.[9] *See Kaiser Found. Health Plan of Mid-Atl. States, Inc. v. Rose*, 583 A.2d 156, 158 (D.C. 1990). To order such discretionary relief, however, the court must first find, "after a medical diagnosis and a civil hearing," that "[t]he [defendant] is a chronic alcoholic"[10] and that "[a]dequate and appropriate treatment provided by the Mayor is available for the [defendant]." D.C. Code § 24-607 (b)(2)(A).[11]

---

[9] This discretion must be exercised in light of Congress's pronouncement that "all public officials in the District of Columbia shall take cognizance of the fact that . . . a chronic alcoholic is a sick person who needs, is entitled to, and shall be provided appropriate medical, psychiatric, institutional advisory, and rehabilitative treatment services." D.C. Code § 24-601.

[10] A "chronic alcoholic" is a "person who chronically and habitually uses alcoholic beverages to the extent that (A) [t]hey injure his health or interfere with his social or economic functioning; or (B) [h]e has lost the power of self-control with respect to the use of such beverages." D.C. Code § 24-602 (1).

[11] In addition to allowing the court to order treatment when a defendant is

(continued…)

When reviewing a discretionary decision of the trial court, we "examine[] the record and the trial court's determination for those indicia of rationality and fairness that will assure [us] that the trial court's [decision] was proper." *Johnson v. United States*, 398 A.2d 354, 362 (D.C. 1979). This court first of all determines whether "the trial court recognize[d] that it had . . . discretion" and whether it "purport[ed] to exercise" such discretion. *Id.* at 363. A trial court errs when it "[f]ail[s] to exercise choice in a situation calling for choice." *Id.* This court next assesses whether "the record reveal[s] sufficient facts upon which the trial court's determination was based." *Id.* at 364. The trial court's discretionary decision must be "based upon and drawn from a firm factual foundation": A court errs "if no valid reason is given or can be discerned for [its discretionary decision]" or "if the stated reasons do not rest upon a specific factual predicate." *Id.*

If this court finds that the trial court did in fact exercise its discretion and that there is an adequate record for this court to review that exercise of discretion,

---

(…continued)

*charged* with a misdemeanor, the statute allows the court to order treatment where a defendant has been *convicted* of public drinking or public intoxication, *see* D.C. Code § 25-1001 (2017 Supp.), or *acquitted* of one of those offenses "on the ground of chronic alcoholism." D.C. Code § 24-607 (b)(1)(A)(ii)–(iii). When the defendant has been convicted of the offense, the court may not order relief under § 24-607 (b) unless it first finds that the defendant "constitutes a continuing danger to the safety of himself or of other persons." D.C. Code § 24-607 (b)(2)(A)(iii).

then this court must "determine whether the trial court's action was within the range of permissible alternatives." *Johnson*, 398 A.2d at 365. If not—or if "the [court] failed to consider a relevant factor, . . . relied upon an improper factor, [or stated] reasons [that do not] reasonably support the conclusion"—then the trial court's exercise of discretion was erroneous. *Id.* (quoting Note, *Perfecting the Partnership: Structuring the Judicial Control of Administrative Determinations of Questions of Law*, 31 Vand. L. Rev. 91, 95 (1978)). *See generally Richardson v. United States*, 98 A.3d 178, 186 (D.C. 2014) (summarizing this court's abuse-of-discretion standard of review). Our standard of review thus reflects that although we accord the trial court substantial "latitude" in its exercise of discretion, this latitude comes with conditions: that the "court . . . take no shortcuts," that it "exercise its discretion with reference to *all* the necessary criteria," and that it explain its reasoning in sufficient detail to permit appellate review. *Ibn-Tamas v. United States*, 407 A.2d 626, 635 (D.C. 1979).

In the present case, the record is inadequate to support the trial court's denial of Mr. Cruz's motion for treatment in lieu of prosecution. The trial court appeared to view as dispositive the PSA officer's representation that Mr. Cruz had been recommended for "intensive outpatient treatment" yet had failed to undergo the

recommended treatment.[12]  But the trial court did not explain—even in general terms—the significance it attached to this representation.  It might be that the trial court thought the PSA officer's representation established that Mr. Cruz did not want alcoholism treatment.  Given, however, that the trial court did not state that it was rejecting Mr. Cruz's counsel's contrary representation that Mr. Cruz *wanted* treatment—let alone provide a reason for rejecting it—we cannot conclude on the record before us that there was a firm factual foundation for the trial court to give definitive weight to the PSA officer's representation.  *Cf. Concord Enters., Inc. v. Binder*, 710 A.2d 219, 224–25 (D.C. 1998) ("Where the trial court provides only conclusory findings, unsupported by subsidiary findings, or by an explication of the court's reasoning with respect to the relevant facts, a reviewing court simply is unable to determine whether or not those findings are clearly erroneous." (quoting *U.S. Fid. & Guarantee Co. v. Kaftarian*, 520 A.2d 297, 300 (D.C. 1987))).

More likely, the trial court might have thought that because Mr. Cruz had

---

[12]  We note that the trial court had asked the PSA officer "what PSA offers in [a] situation like this," suggesting that the trial court was asking the officer to comment on the issue of treatment in lieu of prosecution.  The PSA officer's response apparently addressed the pretrial treatment that PSA had recommended—not PSA's position on whether treatment in lieu of prosecution was appropriate under the facts of this case.  On remand, the trial court should clarify how it understood the PSA officer's representation.

been recommended for "intensive outpatient treatment" rather than inpatient treatment, Mr. Cruz was ineligible for relief. This would have been consistent with the government's position at the motion hearing that treatment under § 24-607 (b) "isn't just going to an outpatient treatment and going back home." But such a conclusion would have been unsupported by the text of § 24-607. The statute does not require inpatient commitment, and in fact indicates that outpatient commitment is an option. *See* D.C. Code § 24-607 (d) ("The Mayor may transfer any . . . committed person" who has not been adjudged a danger to himself or others "from inpatient to *outpatient* status, and any committed person from *outpatient* to inpatient status, without permission of the Court . . . ." (emphases added)). Accordingly, if the trial court rejected Mr. Cruz's motion on the ground that Mr. Cruz could not be committed under § 24-607 (b) for outpatient treatment, then the trial court erred. *See Henson v. United States*, 122 A.3d 899, 902 (D.C. 2015) ("[W]here a trial court makes an error of law, it infects the exercise of discretion.").[13]

It is also possible that the trial court thought that Mr. Cruz's failure to

---

[13] Even though outpatient commitment is permissible under D.C. Code § 24-607 (b), it may be that as a practical or factual matter there are no outpatient-commitment programs that can accommodate Mr. Cruz. The trial court should address this issue on remand.

participate in the treatment recommended by PSA, combined with Mr. Cruz's possible tardiness[14] in applying for relief under § 24-607 (b) and the nature of the offense with which he was charged, weighed against granting treatment in lieu of punishment. *See United States v. Cureton*, Nos. M-11412-81 & M-11522-81, 110 D.W.L.R. 245, 250 (D.C. Super. Ct. Jan. 4, 1982) (Schwelb, J.). But even assuming such reasons would be sufficient to support the trial court's exercise of discretion, this court cannot ignore that these were not the trial court's stated reasons.

The government, quoting D.C. Code § 24-607 (b)(2)(A), contends that we should affirm the trial court's discretionary ruling because in the trial court, Mr. Cruz "failed to show that: (1) 'after a medical diagnosis,' he had been found to be 'a chronic alcoholic'; *or* (2) 'adequate and appropriate treatment provided by the Mayor was available for [him]'" (alteration in original).[15] But the trial court did not rely on Mr. Cruz's purported failure to satisfy the § 24-607 (b)(2)(A) statutory

---

[14] But see *supra* note 4.

[15] Although not material to our disposition of this appeal, it is worth noting that it is not clear that Mr. Cruz did in fact fail to show the availability of adequate treatment options. Mr. Cruz proposed one specific treatment provider—APRA—and suggested that other unspecified options were available. The prosecutor contended that APRA does not do "civil commitments," but he may have meant that APRA does not do *inpatient* civil commitments. But see *supra* note 13.

requirements in declining to grant Mr. Cruz's motion. Moreover, Mr. Cruz specifically requested that the trial court schedule a hearing so that he could present expert medical testimony and other evidence in support of his motion. Perhaps the trial court could have refused to hold such a hearing on the ground that Mr. Cruz had waited too long to request it or that Mr. Cruz had failed to make an adequate proffer—and *then* proceeded to deny Mr. Cruz's motion for lack of evidentiary support—but the trial court did not indicate that it was doing so. Denying Mr. Cruz a hearing without adequate justification—thus depriving him of an opportunity to present evidence relevant to the question whether he satisfied the statutory prerequisites for relief under § 24-607 (b) and relevant to the court's discretionary decision whether to grant such relief—was itself an erroneous exercise of discretion. *Cf. Dawkins v. United States*, 41 A.3d 1265, 1272 (D.C. 2012) ("By declining to hear the [defendant's] proffer, the trial court denied itself a 'firm factual foundation,' which would have allowed it to make 'an informed choice among the alternatives' before it." (quoting *Johnson v. United States*, 960 A.2d 281, 295 (D.C. 2008))).[16]

---

[16] The government also contends "that the record does not show that appellant voluntarily, knowingly, and with the advice of counsel waived such constitutional rights as are implicated by commitment in lieu of prosecution." When a similar argument was made in the trial court, the court appeared to reject it

(continued…)

In sum, the trial court failed to set forth sufficient reasons in support of its discretionary ruling denying Mr. Cruz's motion for treatment in lieu of prosecution: We lack the record necessary "to determine whether the [court's] choice was both reasonable and proper in the specific factual context" of this case. *Johnson*, 398 A.2d at 364. Further, because the record is inadequate to reveal what principles the court considered in denying Mr. Cruz's motion, we cannot conclude that the trial court would, after due consideration of the motion and applying the correct legal principles, deny the motion. Had the court granted the motion, Mr. Cruz would not have faced trial and conviction.[17]

---

(…continued)

(at least provisionally) on the ground that it was defense counsel's "job" to determine whether Mr. Cruz wanted treatment in lieu of prosecution. We do not have occasion to review the trial court's possible resolution of this issue or address the government's argument on the merits, because we lack an adequate record. And the question whether a defendant must make a showing of affirmative consent on the record—for example, go through something akin to the Super. Ct. Crim. R. 11 colloquy—was not squarely raised in the trial court. Nonetheless, if on remand it is determined that Mr. Cruz did not want treatment in lieu of prosecution (or no longer wants such treatment), then Mr. Cruz cannot be committed. *See* D.C. Code § 24-607 (b)(1)(A)(i) (requiring the defendant to "voluntarily request[] . . . treatment").

[17] Our decision to remand the case to the trial court obviates consideration (at least for now) of Mr. Cruz's alternative argument that the trial court violated his due process rights by "plac[ing] undue weight on the Pretrial Service agent's representation" and by failing to "giv[e] Mr. Cruz a chance to deny or explain it."

## III.

For the foregoing reasons, we vacate the trial court's denial of Mr. Cruz's motion for treatment in lieu of prosecution and remand the case for further consideration of the motion.[18]  We do not reverse Mr. Cruz's conviction.  But unless the trial court again decides to deny Mr. Cruz's motion, the trial court must vacate Mr. Cruz's conviction and sentence and grant any other appropriate relief.

*So ordered.*

---

[18]  The trial court should consider whether Mr. Cruz still wants treatment in lieu of prosecution.  See *supra* note 16.