*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 22-CV-0821

OJI FIT WORLD, LLC, *et al.*, APPELLANTS,

V.

DISTRICT OF COLUMBIA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-001259-B)

(Hon. William M. Jackson, Motions Judge)
(Hon. Hiram E. Puig-Lugo, Motions Judge)
(Hon. Ebony M. Scott, Motions Judge)

(Submitted April 17, 2024                    Decided October 24, 2024)

*Michael Lasley* was on the brief for appellants Oji Fit World, LLC, and Amaka Oji.

*Brian L. Schwalb*, Attorney General for the District of Columbia, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Thais-Lyn Trayer*, Deputy Solicitor General, and *Brian J. Leitch* and *Eric M. Levine*, Assistant Attorneys General, were on the brief for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and THOMPSON, *Senior Judge*.

EASTERLY, *Associate Judge*: Appellants, Amaka Oji and Oji Fit World, LLC

("OFW"), appeal from the Superior Court's order granting summary judgment in

favor of appellee the District of Columbia on its claims under the D.C. False Claims Act and the common law doctrine of unjust enrichment and ultimately awarding the District $1,001,362.50 in treble damages and $497,000 in civil penalties. For the reasons set forth below, we affirm the summary judgment order, but we remand for further consideration of damages and penalties.

## I.      Factual and Procedural Background

The D.C. Department of Health Care Finance ("DHCF") approved Ms. Oji as a Medicaid provider in 2011. In this role, Ms. Oji was eligible for reimbursement from the District Medicaid program for certain wellness services, including fitness training, that she provided to Medicaid beneficiaries with intellectual and developmental disabilities. Ms. Oji provided these services through a number of trainers employed by OFW, of which she was the sole owner and manager. In the span of approximately three and a half years, between 2012 and 2015, Ms. Oji and her company submitted more than 24,000 claims for reimbursement to DHCF.

This billing caught the attention of DHCF, the Office of the Inspector General for the Centers for Medicare and Medicaid Services, and the Federal Bureau of Investigation, each of which investigated Ms. Oji and her company for fraudulent Medicaid billing practices. In April 2021, the District of Columbia filed suit against Ms. Oji and her company under D.C. Code § 2-381.02 (the False Claims Act) and

the common law doctrine of unjust enrichment. The complaint alleged that between 2012 and 2015, Ms. Oji, through her company, regularly overbilled DHCF for Medicaid payments. Trainers employed by OFW would submit "daily fitness reports" (but not timecards) to OFW's administrative employees following each training session, and Ms. Oji, who made all final billing decisions, would submit corresponding claims for reimbursement to DHCF. Regardless of how long a training session actually lasted, Ms. Oji almost always "billed Medicaid and accepted payment for a full hour of service." For example, Ms. Oji billed a full hour for sessions where the trainer's daily fitness report reflected that the beneficiary had canceled their session or had not shown up, or that the session had taken place but lasted less than an hour, or that a trainer had provided back-to-back trainings with different clients in locations that would have required significant travel time to move between. Although the complaint provided some specific examples of daily fitness reports that did not accord with Ms. Oji's corresponding claim for reimbursement (and noted that "[h]undreds of daily fitness reports lack information necessary to assess proper billing"), it did not specify an exact number of times Ms. Oji and her company allegedly overbilled, nor did it provide a comprehensive list of dates on which the overbilling occurred.

Ms. Oji (but not OFW) filed an answer, which the District moved to strike on the ground that it "failed to respond to the majority of individual allegations" or

"assert a proper general denial of all allegations" in the complaint, in violation of Super. Ct. Civ. R. 8(b). Ms. Oji did not oppose the motion to strike, and the Superior Court (Hon. William M. Jackson) granted it. Ms. Oji subsequently filed a revised answer.[1] Neither her first nor second answer raised any affirmative defenses related to laches or any statute of limitations.

At a scheduling conference in October 2021, the Superior Court instructed counsel for Ms. Oji and OFW that he needed to file an answer on behalf of the corporation. The court also sua sponte expressed concern about the length of time that had elapsed between the alleged fraudulent conduct in 2012-2015 and the eventual filing of the District's lawsuit in 2021. To the court's first point, counsel for Ms. Oji and her company stated that his failure to file an answer on OFW's behalf had been an oversight. To the court's second point, the District explained that its suit was an outgrowth of the DHCF investigation, which launched in 2015 and had provided Ms. Oji and OFW with ample notice of the fraud allegations; that the lawsuit was filed within the statute of limitations; and that Ms. Oji and her company had not filed a motion to dismiss the District's suit on statute of limitations grounds.

---

[1] In a later order, the Superior Court mistakenly stated that the second answer had also been stricken. The Superior Court docket, however, indicates that although the District filed a motion to strike Ms. Oji's first revised answer, that motion was denied.

In response, counsel for Ms. Oji and her company did not contest the timeliness of the District's action; instead, he argued that his clients had not been given adequate information about the basis for the suit. The court refused to entertain this lack-of-specificity argument, admonishing counsel for Ms. Oji and OFW that

> [Y]ou need to put that in writing . . . [I]f you [have] issues or claims of laches . . . or whatever you have claimed, then you need to file something . . . [I]f you have appropriate request[s] for discovery from the Government, then make those requests in writing.

The court then underscored its statements, observing, "[t]his is not an oral argument where I'm just going to say, okay, you said this and I'm going to order that. . . . [It] doesn't work that way." A few days later, OFW, alone, filed what it entitled a "Revised Answer," though it was OFW's first responsive pleading, which still did not raise laches, statute of limitations, or any other affirmative defense.

The following month Ms. Oji and OFW together filed a motion to dismiss, arguing for the first time that the District's suit was time barred by a six-year statute of limitations and laches. The Superior Court (Hon. Hiram E. Puig-Lugo) denied the motion, ruling that it was untimely under Super. Ct. Civ. R. 12(b), which requires that a motion to dismiss be filed before an answer. The court also "note[d] that Defendants failed to raise statute of limitations and laches as affirmative defenses in their" answer, and that "[f]ailure to properly plead an affirmative defense may result

in waiver of the affirmative defense." Ms. Oji and OFW then sought to raise a variety of objections to the District's complaint in a document entitled a "counterclaim." The District moved to strike this filing because it failed to state a claim for relief under Super. Ct. Civ. R. 12(b)(6). In the absence of any opposition from Ms. Oji and OFW, the court granted the District's motion to strike, agreeing that the pleading "d[id] not seek any relief from the Plaintiff."

The District moved for summary judgment in March 2022, asserting that the undisputed facts established that Ms. Oji and OFW had submitted false claims to the District's Medicaid program and falsified records in support of their false claims. More specifically, in its statement of undisputed facts, the District asserted that (1) of the 24,702 billed sessions between February 13, 2012 and August 30, 2015, 99.6% were for a full hour of training services, rather than a lesser authorized increment of fifteen, thirty, or forty-five minutes; (2) "[m]any Medicaid recipients who received fitness services from Oji Fit World were not capable of exercising for a full hour"; and (3) "the average fitness training session [according to one OFW fitness trainer] lasted only 20 to 30 minutes and . . . most of the Medicaid beneficiaries trained by Defendants were unable to train for longer than 20 to 30 minutes." Also in its statement of undisputed facts, the District described more than seventy known training sessions for which Ms. Oji and OFW submitted claims for an hour of services when either no training services, or less than an hour of services, had been

provided. Based on these facts, the District asserted that there was no genuine dispute that Ms. Oji and OFW owed at least $1,001,362.50 in damages and $994,000 in civil penalties under D.C. Code § 2-381.02(a), which allows the District to recover "3 times the amount of damages which [it] sustains" as a result of a False Claims Act violation and civil penalties of "not less than $5,500, and not more than $11,000"[2] for each false claim.

Ms. Oji and her company filed a four-page opposition but did not file their own statement of disputed facts, as required by Super. Ct. Civ. R. 56(b)(2)(B). At the hearing on the District's motion, the Superior Court (Hon. Ebony Scott) noted that Ms. Oji and OFW's failure to file a statement of facts made it "unclear as to what the arguments are in opposition to the District's claims," and asked counsel for Ms. Oji and her company why, given this omission, it should not consider all of the District's alleged facts undisputed. Counsel did not respond to the court's question directly, instead referencing "the statute of limitations" and the District's "questionable litigation tactics." The court rejected this argument, explaining that it

---

[2] The False Claims Act was amended in 2013, raising the minimum and maximum civil penalties to which the District is entitled; before that time, the statute authorized civil penalties of "not less than $5,000 and not more than $10,000" per violation. *Compare* D.C. Code § 2-381.02(a) (2011) *with* D.C. Code § 2-381.02(a) (2013). In light of this change, the District, in calculating its request for civil penalties, explained that the "penalty amounts applied to each of the . . . violations depends on whether the violation occurred before or after March 18, 2013."

had already "deal[t] with the issue of statute of limitations and laches," these defenses "w[ere] not raised timely," and they therefore were waived.

The court ultimately granted summary judgment for the District but ordered supplemental briefing on damages and penalties. In their supplemental brief, the District proposed what it characterized as a "straightforward and conservative" "damages calculation." The District explained that 24,584 of the "fitness training sessions that [Ms. Oji and OFW] billed to the District's Medicaid program . . . were for a full hour of fitness training services," but that, based on testimony from one OFW trainer, "the average fitness training session lasted just twenty to thirty minutes." Thus, the District asserted that Ms. Oji and OFW had "double billed the District" for each of these 24,584 claims "by submitting claims for four quarter hour units [each $18.75] when [at most] only two quarter hour units of service were provided." Even so, the District requested "damages for just one quarter hour" of each of the purportedly hour-long sessions billed to the Medicaid program.

In addition to damages, the District requested that the court impose the maximum civil penalty allowed under the False Claims Act (either $10,000 or $11,000, *see supra* note 2) for each false claim. The District put forward what it described as a "conservative[]" request that the court impose "a civil penalty for just one false claim per bi-monthly payment processing cycle," ninety-three in all. The

District based this request on its contention that "at least one claim for payment per cycle was clearly a false claim subject to civil penalty."

In a one-page order without analysis, the Superior Court awarded the District the full damages award it sought ($1,001,362.50) and half of its requested civil penalties ($497,000), for a total of $1,498,362.50.  This appeal followed.

## II.    Analysis

Many of the arguments raised by Ms. Oji and her company are difficult to decipher due to the quality of the briefing, which contains disjointed and fragmented sentences; lacks proper citations to the record or supporting authority, much less explanatory parentheticals; confusingly intertwines and repeats strands of arguments; and largely fails to coherently orient the reader within any clear analytic framework.  We decline to pick up the breadcrumbs of Ms. Oji and her company's challenges to the Superior Court's rulings in the order in which they have been scattered, and we have instead attempted to decipher and reorganize these arguments in the manner that makes the most sense to us.  We address first all the arguments related to matters preceding the Superior Court's summary judgment ruling, then address the challenges to the court's dispositive ruling, and lastly address the court's award of damages and penalties.

## A.    Matters Preceding Summary Judgment

### 1.    Motion to Dismiss

Ms. Oji and OFW argue that the Superior Court abused its discretion by denying their motion to dismiss as untimely without "review[ing], consider[ing], or rul[ing] on [its] merits."  A motion to dismiss "must be made before a pleading if a responsive pleading is allowed."  Super. Ct. Civ. R. 12(b).  There is no legitimate dispute that the defendants' motion was untimely; by the time they filed their motion to dismiss, they had already filed *three* responsive pleadings.  *See supra* Part I.

Ms. Oji and her company nonetheless assert, without citation to the record, that "Judge Jackson's [o]rder implied that the Appellants' Motion to Dismiss presented significant issues for the [j]ury to decide regarding [l]aches and the [statute of] limitation," and that "[h]is [o]rder was timely and still pending a decision on the merits of that [m]otion, contrary to" the court's subsequent denial.  We presume these quoted clauses refers to Judge Jackson's oral directive to their counsel at the October 1, 2021 status conference to "file something" if they had "issues or claims of laches . . . or whatever," and we understand Ms. Oji and her company to argue that, with this directive, Judge Jackson gave them permission to file a motion to dismiss.  We disagree.  The court's reminder to counsel that it was inappropriate to raise challenges to the complaint at a scheduling conference did not absolve Ms. Oji

and OFW of the responsibility to file pleadings in accordance with court rules. And we note that counsel for Ms. Oji and OFW did not in fact rely on the court's statement to file a motion to dismiss; instead, his next filing after the scheduling conference was a "revised answer" for OFW (which did not include laches or statute of limitations arguments). Furthermore, whether the motion that they ultimately filed raised "significant issues" has no bearing on whether the court was within its discretion to dismiss it as untimely. Indeed, rejecting substantive claims regardless of their merits is the necessary byproduct of enforcing timing rules for filing.

### 2. "8(b) strategy"

Ms. Oji and her company argue that "[a]fter [they] filed several [a]nswers to the bogus Appellee pleadings, it became clear . . . that the Appellee was using an '8(b) strategy,' to cover up the inadequate and incomplete [c]omplaint and the [District]'s failure to provide information and evidence that [Ms. Oji and her company] filed and committed false claims." And they assert that Judge Scott erred in "accept[ing] . . . the [District's] 8(b) litigation and strategy and tactics." Rule 8(b) of the Superior Court Rules of Civil Procedure governs "Admissions and Denials" in a defendant's answer to a complaint. By referring to the District's "8(b) strategy," Ms. Oji and her company seem to imply there was something nefarious about the District moving to strike Ms. Oji's first and second answer (only the first motion

was granted, *see supra* note 1),[3] but they never explain the nature of the alleged impropriety, much less provide a legal foundation for it, beyond invoking Rule 8(b). *See Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) (explaining that this court will decline to address arguments that are inadequately developed in briefing because "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  Ms. Oji and her company themselves did not even oppose the District's motions to strike various pleadings when they had the opportunity, making it all the harder to understand their claim that the Superior Court (Judge Jackson, not Judge Scott as they assert) abused its discretion in granting this motion and rendering this claim forfeited.  *See* Super. Ct. Civ. R. 12-I(e) ("If an opposition is not filed within the prescribed time, the court may treat the motion as conceded.").  For all these reasons we reject any challenge to the District's "8(b) strategy" or the Superior Court's response thereto.

### 3. Discovery

Ms. Oji and her company argue that the Superior Court abused its discretion

---

[3] The District also moved to strike Ms. Oji and OFW's "counterclaim," but that was based on the District's argument that the counterclaim "fail[ed] to state a claim for relief under Super. Ct. Civ. R. 12(b)(6)," not on Rule 8(b).  *See infra* Part II.A.4.

by failing to "compel the [District] to respond to [their] [d]iscovery demands." We disagree.

Ms. Oji and OFW claim that they "submitted the[ir] first [d]iscovery [r]equest" in May 2021. But the record indicates they never served separate discovery requests on the District; they only mailed the District a "discovery motion," in which they asked the court to order the District to respond to a mishmash of requests for information and documents. It is unclear whether this motion could serve as a legitimate request for discovery under our rules. *See* Super. Ct. Civ. R. 30, 31, 33, 34 & 36 (requiring that a party propound a specific type of discovery, e.g., deposition, interrogatories, admissions, or document requests); *see also* R. 26(g)(1) (requiring counsel to sign each discovery request). In any event, it appears that Ms. Oji and OFW's discovery motion was not filed with the court, given that it does not appear on the Superior Court docket, nor did the court ever rule on it. The fact that the District nevertheless filed an opposition with the court (in which it argued that Ms. Oji and OFW had failed to comply with Super. Ct. Civ. R. 37, by filing a motion to compel "before the District received any actual discovery requests") did not create an obligation for the court to rule on a motion that it had never received. Super. Ct. Civ. R. 37(a)(2) (requiring "an application for an order to a party . . . to be made to this court"); *see also Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004) (describing counsel's "obligat[ion] to monitor the court's docket"). And,

in any event, the District was surely correct that the motion drafted by Ms. Oji and OFW was improper. *See* Super. Ct. Civ. R. 37(a)(1)(D) (governing motions to compel discovery, and requiring, inter alia, that a motion must be filed with the court and "must set out verbatim the question propounded and the answer given").[4] We thus reject Ms. Oji and OFW's argument that the Superior Court abused its discretion in failing to compel discovery pursuant to the May 2021 "discovery motion."

Ms. Oji and OFW filed another motion to compel discovery—still seemingly without having made any actual discovery requests—in September 2022, after the court had already granted summary judgment to the District and the parties had already filed their supplemental briefing on damages. Judge Scott denied this motion as moot "in light of [its] dispositive ruling" on the District's motion for summary judgment, and we perceive no error in that decision.

---

[4] Without grappling with the larger issues that their initial "discovery motion" preceded any actual discovery requests and was never filed with the court, Ms. Oji and her company dispute the District's assertion that they never met and conferred with the District before filing their motion, as required by Super. Ct. Civ. R. 37(a). They assert that they "met on several occasions with multiple [District] attorneys in person or by phone to discuss this case . . . as early as October 2017 through 2021." We fail to see how meetings (of which there is no record evidence), most of which were undertaken years before the District filed this suit, could have satisfied the requirement that parties meet and confer about specific discovery disputes arising out of litigation.

### 4. Dismissal of their counterclaim

Ms. Oji and OFW argue that the Superior Court's "dismissal of [their] [c]ounterclaim, without an explanation or ruling, undermined, eliminated, and denied their ability to address the [District's] . . . claims with accurate evidence, contrary to Superior Court Rule 13." This argument has no record support. At the hearing on the District's motion for summary judgment, the Superior Court clearly articulated its reasons for striking the counterclaim, explaining that although the pleading was styled as a "counterclaim," it was "really an opposition . . . [a]nd it does not seek any relief from the Plaintiff as a counterclaim [from the] plaintiff would ordinarily do." The court thus determined "that striking the pleading . . . [wa]s appropriate under [Super. Ct. Civ. R.] 12(f)." We agree with the Superior Court's assessment that the so-called "counterclaim" did not in fact seek any relief, and the court was within its rights to strike the pleading. *See* Super. Ct. Civ. R. 8(a)(2), (3) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought . . . ."); *see also* Super. Ct. Civ. R. 12(f).

### B. Summary Judgment

Ms. Oji and her company argue that, in granting summary judgment for the District, the Superior Court erred by not "consider[ing] or rul[ing] on whether the

[District's] [c]omplaint[] violated" the applicable statute of limitations, by "fail[ing] to consider or rule on the [their] Opposition to" the District's motion for summary judgment, and by violating the "basic common law standard . . . that every trial must be decided by substantial and sufficient evidence." We review summary judgment rulings de novo. *District of Columbia v. Place*, 892 A.2d 1108, 1110-11 (D.C. 2006). We may uphold the Superior Court's ruling only if we conclude that there were no genuine issues of material fact and that, viewing the evidence in the light most favorable to the defendants, the District was entitled to judgment as a matter of law. *See Ward v. Wells Fargo Bank, N.A.*, 89 A.3d 115, 126 (D.C. 2014).

We turn first to the argument by Ms. Oji and OFW that the Superior Court failed to consider their statute of limitations defense in opposition to the District's motion for summary judgment (Ms. Oji and OFW do not brief the actual merits of this argument). The court explained in its summary judgment order "that while Defendants make a statute of limitations and laches argument," they "failed to raise this argument as an affirmative defense in their" answer and thus "waived this affirmative defense." We agree with the Superior Court's conclusion that, by failing to raise statute of limitations and laches arguments as affirmative defenses in any of the three answers they filed, Ms. Oji and OFW lost the opportunity to make this argument. *Day v. McDonough*, 547 U.S. 198, 202 (2006) ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer

or in an amendment thereto."); *see also Feldman v. Gogos*, 628 A.2d 103, 104 (D.C. 1993) ("The statute of limitations is an affirmative defense which . . . must be set forth affirmatively in a responsive pleading and may be waived if not promptly pleaded" (alteration omitted) (quoting *Whitener v. WMATA*, 505 A.2d 457, 458 (D.C.1986)).[5]   The Superior Court was therefore correct not to consider this argument at the summary judgment stage.  *See Wood v. Milyard*, 566 U.S. 463, 470 (2012) ("An affirmative defense, once forfeited, is 'exclu[ded] from the case . . . .'" (alteration in original) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1278 (3d ed. 2004))).

Ms. Oji and OFW also argue that the court failed to consider their opposition to the District's summary judgment motion.  The premise of their argument appears

---

[5] The Superior Court, consistent with the Superior Court Rules of Civil Procedure, said that Ms. Oji and OFW "waived" their statute of limitations argument.  Super. Ct. Civ. R. 12(h)(1) (providing that "a party waives any defense listed in Rule 12(b)(2)–(5)" when they, inter alia, fail to "include it in a responsive pleading").  But as we recently held in *Plus Properties Trust v. Molinuevo Then*, 2024 WL 4509252 (D.C. 2024), it is more accurate to say that when a party fails to timely raise a defense under Rule 12, that defense is "forfeited." *Id*. at *4 (explaining "the failure to raise a defense in a timely manner is 'better characterized as . . . forfeiture,' . . . while 'waiver is the intentional relinquishment or abandonment of a known right'"); *cf. Chew v. United States*, 314 A.3d 80, 91 (D.C. 2024) (Easterly, J., concurring).  Forfeited issues are still reviewable on appeal under a demanding "miscarriage of justice" standard, *Plus Properties* at *5, but as noted above Ms. Oji and OFW have not asked us to review the merits of their statute of limitations argument; they have only asked us to review the Superior Court's refusal to consider this belatedly raised defense.

to be that "[t]he Court wrongly stated that Appellants failed to file a statement of the material facts that they contend are genuinely disputed." The Superior Court was correct in finding that no such statement had been filed. There is no statement in the record from Ms. Oji and her company that complies with Super. Ct. Civ. R. 56(b)(2)(B),[6] and they point to nothing in the record to demonstrate that they did file such a statement. Nor did they attempt to raise genuine factual disputes in their opposition to the District's motion. The closest they came was to argue that the District "manipulated the statements of" one OFW fitness trainer, Darnell Bolding, whose deposition testimony was used to support the District's premise that the "average" training session lasted only twenty to thirty minutes, but they did not explain how his statements should actually be understood, nor did they specifically address any of the facts alleged by the District or offer any alternative facts that would create a factual dispute.[7] Under Rule 56, "[i]f a party fails to properly . . . address another party's assertion of fact" in a summary judgment opposition, "the

---

[6] This rule states that "[a] party opposing the motion [for summary judgment] must file a statement of the material facts that the opponent contends are genuinely disputed. The disputed material facts must be stated in separate numbered paragraphs that correspond to the extent possible with the numbering of the paragraphs in the movant's statement." Super. Ct. Civ. R. 56(b)(2)(B).

[7] In their opposition, Ms. Oji and OFW cited to an affidavit by Mr. Bolding, consisting mostly of yes/no questions, in which he denied "engag[ing] in a scheme and conspiracy" to overbill DHCF and asserted that he was "[not] told to over bill, or write false reports" and that "[t]his case is a bunch of nonsense," but said nothing about the typical length of training sessions.

court may . . . consider the fact undisputed for the purposes of the motion." *See* Super. Ct. Civ. R. 56(e)(2).[8]

Lastly, Ms. Oji and OFW argue that the court violated the "basic common law standard . . . that every trial must be decided by substantial and sufficient evidence." This standard is inapplicable. This case was not decided after a trial, but instead on summary judgment, where the only questions are whether there is any "genuine dispute as to any material fact" and whether "the movant is entitled to judgment as a matter of law." Super Ct. Civ. R. 56(a)(1). As noted, Ms. Oji and OFW never disputed the District's recitation of facts in Superior Court and it is too late for them to do so now. *See supra* note 8. As for contesting the District's entitlement to judgment as a matter of law based on those facts, Ms. Oji and OFW's brief consists largely of descriptions of Medicaid regulations and procedural history and contains little in the way of identifiable legal argument. To the extent that Ms. Oji and OFW are arguing that any false billing was limited and that the District failed to prove widespread wrongdoing, their argument is untethered from the District's complaint

---

[8] Ms. Oji and her company seek to identify material disputes of fact in their brief on appeal. But they make their arguments in the wrong place at the wrong time. Per Rule 56, disputes of fact must be raised in the trial court before the court rules on a pending summary judgment motion, and this court will not entertain any factual material that was not presented to the trial court. *See Futrell v. Dep't of Lab. Fed. Credit Union*, 816 A.2d 793, 802 n.10 (D.C. 2003) ("[A] party is bound by the factual disputes raised before the trial court and cannot raise new factual disputes for the first time on appeal.").

or the court's order. Although the District presented evidence of numerous false claims and false records, it was not required to allege a minimum number of fraudulent acts in order to prove liability under the statute. *See* D.C. Code § 2-381.02(a). Thus, to conclude that Ms. Oji and her company were liable, all the Superior Court had to do was to find that, based on the undisputed facts presented by the District, they had committed one act of filing a false claim or a false record as a matter of law. The court did just that and more, giving numerous specific examples of false billing and false records derived from the District's statement of undisputed facts, and Ms. Oji and OFW supply us with no argument to second guess that decision.

Because Ms. Oji and her company have not put forward any meritorious argument for why the District is not entitled to judgment as a matter of law,[9] we

---

[9] In addition to the arguments addressed above, Ms. Oji and her company argue that the Superior Court erred by "not consider[ing], address[ing], or rul[ing] on the Appellants' 'Reasonable Interpretation Defense.'" Again, without any citations to the record or adequate citation to the law—Ms. Oji and her company cite simply to a Supreme Court case "*Safeco v. Burr*" without providing any reporter information, much less an explanation of how this decision supports their argument—we struggle to discern the nature of their challenge to the Superior Court's ruling. In any event, we see no mention of a "reasonable interpretation defense" in their opposition to the motion for summary judgment. Accordingly, we decline to address this undefined and seemingly unpreserved issue. *See Pajic v. Foote Props., LLC*, 72 A.3d 140, 145 (D.C. 2013) ("[T]his court's review on appeal is limited to those issues that were properly preserved" except "in 'exceptional

affirm the Superior Court's order granting summary judgment.

## C.     Damages and Penalties

Ms. Oji and OFW challenge the trial court's decision to award the District treble damages and civil penalties under the False Claims Act, asserting the court relied on inaccurate or misleading representations by the District. We review for abuse of discretion. *See James G. Davis Constr. Corp. v. HRGM Corp.*, 147 A.3d 332, 346 (D.C. 2016). Applying this standard, we must vacate the court's ruling and remand. The Superior Court's order awarding damages and penalties contains no

---

situations and when necessary to prevent a clear miscarriage of justice.'"); *Comford*, 947 A.2d at 1188.

Ms. Oji and OFW raise for the first time on appeal that Ms. Oji "should not have been charged as a co-defendant in this case because OFW . . . is a separate legal entity." Because this argument is unpreserved, we decline to address it on appeal. *Pajic*, 72 A.3d at 145.

Ms. Oji and her company also argue that the trial court's summary judgment order violates their Seventh Amendment right to a jury trial. They did not make this constitutional argument in the Superior Court in opposition to the District's motion for summary judgment, and it is meritless. "It is well settled that a trial court does not violate the Seventh Amendment by granting summary judgment where that is appropriate." *Burrello Grp., LLC v. District of Columbia*, 303 A.3d 618, 627 (D.C. 2023).

Lastly, Ms. Oji and OFW accuse Judge Scott of bias in ruling on their summary judgment motion. Because Ms. Oji and OFW offer no support for this assertion, we decline to address it as well. *See Bardoff v. United States*, 628 A.2d 86, 90 n.8 (D.C. 1993) (where "[a]ppellants provide no supporting argument in their brief for [a] general assertion . . . we consider [it] to be abandoned").

supporting analysis or explication, leaving us unable to determine if it is the product of a reasonable exercise of discretion.

A person found liable under the False Claims Act must pay the District treble damages and "a civil penalty of not less than $5,500, and not more than $11,000, for each false claim." D.C. Code § 2-381.02(a).[10] After the court granted summary judgment to the District, the parties filed supplemental briefing on damages and penalties. In that briefing, the District asserted that the "average fitness training session lasted just twenty to thirty minutes," based upon the testimony of one trainer that that was what "most" of the individuals he trained had capacity for. The District then further assumed that Ms. Oji and OFW had double billed in every instance where they had billed for hour-long training sessions, and that they had submitted at least "one false claim per bi-monthly payment processing cycle." Based on these assumptions, the District requested $1,001,362.50 in treble damages and $994,000 in civil penalties. The District did note that it was working with limited records to make these assessments, explaining that its "ability to thoroughly document the full extent of the Defendants' overbilling" was "impeded" by Ms. Oji and OFW's failure to participate meaningfully in discovery, including by failing to produce thousands

---

[10] *See supra* note 2.

of their trainers' visit reports.[11]  Thus the District also asked the court to treat the amount of damages as conceded by Ms. Oji and OFW as a discovery sanction under Super. Ct. Civ. R. 37(b)(2)(A)(i).

The Superior Court issued a judgment order awarding the District $1,001,362.50 in treble damages and $497,000 in civil penalties—the full amount of damages and half the amount of civil penalties that the District had requested.  The court, however, provided no explanation as to how it had arrived at the numbers it ultimately awarded.

In the absence of any explanation from the Superior Court as to how it arrived at the damages and civil penalties awards, we are unable to review its decision.  Perhaps, as the District had suggested, the court treated damages as conceded by Ms. Oji and OFW as sanction for their discovery violations; but if so, we have no explication of what, specifically, those discovery violations were and why they would support such a sanction.  Alternatively, perhaps the court relied on the District's assumptions to calculate damages and penalties, but if so, we do not know why the court thought those assumptions were legally and factually supported.  In

---

[11] For example, in granting a motion to compel discovery filed by the District, the Superior Court in July 2022 found that Ms. Oji and OFW "ha[d] exhibited a total failure to answer the first set of Requests for the Production of Documents and Interrogatories[] issued by the District."

particular, the court made no findings as to whether the testimony of just one trainer that "most" individuals he trained were only able to train for twenty or thirty minutes was a sufficient basis to conclude that "the average fitness training session [across all OFW trainers] lasted just twenty to thirty minutes," or whether there was any other basis for concluding that Ms. Oji and OFW had overbilled DHCF for each of its hour-long training sessions by either half an hour ($37.50)—as the District argued—or a quarter hour ($18.75)—as the District more "conservatively" estimated as the foundation for its damages request. With respect to penalties, it appears the court adopted the District's calculations but took the minimum penalty ($5,000 before March 2013 and $5,500 afterwards, *see supra* note 2) rather than the maximum, thereby arriving at exactly half the amount of penalties requested by the District. But even assuming this is the case, the court did not explain its reasoning in doing so, nor did it make any findings as to whether the undisputed facts showed that "at least one claim for payment per [bi-monthly billing] cycle was clearly a false claim subject to civil penalty."

"A trial court's failure to explain . . . a nonobvious exercise of discretion generally requires a remand, particularly when it prevents adequate appellate review of the basis of its holding." *Long v. United States*, 312 A.3d 1247, 1269 (D.C. 2024). "Although we accord the trial court substantial latitude in its exercise of discretion, this latitude comes with conditions: that the court take no shortcuts . . . and that it

explains its reasoning in sufficient detail to permit appellate review." *Id.* at 1270 (internal quotation marks and alterations omitted) (quoting *Cruz v. United States*, 165 A.3d 290, 294 (D.C. 2017)); *see also Johnson v. District of Columbia*, 144 A.3d 1120, 1140-41 (D.C. 2016) (remanding for the "trial court [to] fully come to grips with the appropriate measure of damages [under the False Claims Act] in light of all the facts of record and relevant decisional law").

For the foregoing reasons, we affirm the Superior Court's order granting summary judgment for the District of Columbia under the False Claims Act and unjust enrichment, but we remand for further litigation on treble damages and civil penalties.

*So ordered.*